[No. H017519. Sixth Dist. Mar. 16, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DEBORAH LYNETTE THOMPSON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts VI, VII, VIII, IX, X, XI, XII and XIII.

42

COUNSEL

Arthur Dudley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WUNDERLICH, J.—**

### I. *Statement of the Case*

Defendant Deborah Lynette Thompson appeals from a judgment entered after a jury convicted her of gross vehicular manslaughter while intoxicated (GVMI) and found that she previously served a prison term and had two prior convictions for driving under the influence (DUI), one of which involved bodily injury to another person. (Pen. Code, §§ 191.5, subds. (a) and (d) and 667.5, subd. (b).)

On appeal, defendant claims that the court erred in giving incorrect instructions on GVMI and the required predicate acts, duplicative instructions concerning GVMI and a lesser included offense, and an inadequate cautionary instruction concerning the evidence necessary to establish gross negligence. She claims the court further erred in making improper comments on the evidence; admitting autopsy pictures of the victim and evidence of her mental state; and excluding evidence of the victim's prior DUI arrest, her prior inconsistent statements, and the fact that she did not make certain statements to a police officer. Last, defendant claims the prosecutor was guilty of misconduct.

We affirm.

### II. *Facts*

On March 18, 1997, around 5:30 p.m., defendant and Ed Traster, the victim, were driving in his blue Thunderbird on Summit Road, a two-lane mountain road in Santa Cruz County east of Highway 17. It was still daylight, visibility was good, and there were no obstructions in the road. Both defendant and Traster had been drinking and taking drugs.

While travelling on a straight stretch of the road where the posted speed is 40 m.p.h. (25 m.p.h. when children are present), defendant, the driver, accelerated to at least 55 m.p.h. She veered across the double line into the oncoming lane, jerked back into her own lane, and then lost control of the car. It spun around, jumped the curb, went up an embankment, careened along a cyclone fence, hit a tree, plowed back down the embankment, rolled over onto its side, and finally came to rest.

Traster had not been wearing a seat belt and was partially ejected. His head was crushed, and he died instantly. Defendant, who was also not wearing a seat belt, survived and managed to climb out of the car through the sun roof. She suffered a laceration on the bridge of her nose and various bruises.

Kelly Raftery-Piunit, an assistant district attorney for Santa Clara County, witnessed the accident. She called "911" and then stopped at the scene. Traster was in the passenger seat. Raftery-Piunit testified that defendant kept saying " 'Poor,' and then a man's name. It was a male name, but I don't remember what name it was, but it was just—she was pretty hysterical. [¶] 'Poor,' let's just say, 'Dave,' or something. 'Poor Dave, poor Dave. I can't believe I did this to poor Dave,' and kind of hysterical. I don't know—two, three, four, times."

Joshua Doak also witnessed the accident. He saw two people inside the car immediately before the accident and identified defendant as the driver and Traster as the passenger. After the accident, he saw Traster hanging out of the passenger seat.

Richard Mason, a forensic pathologist and Officer Dane Lobb of the California Highway Patrol, an expert in accident reconstruction, opined that defendant was the driver and Traster the passenger at the time of the accident and that neither was wearing a seat belt. They based their opinions on numerous factors, including the separate seat-position settings that corresponded to defendant's and Traster's physical size, the impact marks on the driver's side that corresponded to defendant's injuries, and Traster's position after the crash and the injuries he suffered.

Blood tests revealed that at the time of the accident defendant and Traster had blood-alcohol levels of .20 and methamphetamine in their systems. Defendant also had valium and its metabolite in her system.

*The Defense*

Defendant attempted to show that Traster was driving the car at the time of the accident. To this end, Gary Fairchild testified that he saw defendant in

the passenger seat of the Thunderbird parked in front of a liquor store sometime between 3:00 and 4:00 p.m. He did not see Traster at all.

Whitaker Deiniger testified that around 4:00 p.m., Traster drove up to his house with defendant as a passenger. He and Traster spoke for a few minutes, and then Traster drove away.

Michael Tabler testified that around 5:00 p.m., Traster and defendant picked him up at his residence, and they all went to a liquor store. Traster then drove back to Tabler's house. According to Tabler, Traster was drunk and drove fast and made quick turns. He said he tried to take Traster's flask before they left, but he could not find it.

### III. *Instructional Claims Concerning GVMI*

#### A. *The Statute and Instruction*

Penal Code section 191.5, subdivision (a), provides, "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."[1]

The court instructed the jury as follows: "Every person who drives a vehicle in a grossly negligent manner, and in violation of [section] 23152, that is driving under the influence of alcohol and/or drugs, and/or [section] 23153, which is driving under the influence causing injury . . . . [a]nd unintentionally, but unlawfully, kills another human being, is guilty of the crime of GROSS vehicular manslaughter while intoxicated, in violation of

---

[1]Vehicle Code section 23140 proscribes driving under the influence of alcohol by a person under 21 years of age.

Vehicle Code section 23152, subdivisions (a) through (d), proscribe driving under the influence of alcohol or drug or the combined influence of both (subd. (a)); driving with a blood-alcohol content of .08 or more (subd. (b)); driving by a person addicted to the use of any drug (subd. (c)); and driving a commercial vehicle with a blood-alcohol content of .04 or more (subd. (d)).

Vehicle Code section 23153, subdivisions (a) and (b), proscribe driving under the influence of alcohol or a drug or the combined influence of both and concurrently committing an unlawful act or omission, which, in turn, causes injury to another person (subd. (a)) and driving with a blood-alcohol content of .08 percent and concurrently committing an unlawful act or omission, which, in turn, causes injury to another person (subd. (b)).

Unless otherwise specified, all further statutory references are to the Penal Code.

Penal Code Section 191.5(a). [¶] A killing is unlawful when a person commits an unlawful act, not amounting to a felony, dangerous to human life under the circumstances of its commission, or commits an act ordinarily lawful, which might produce death, which unlawful act is a cause of the death of another [ ] human being. [¶] The commission of an unlawful act with gross negligence would necessarily be an unlawful act dangerous to human life, under the circumstances of its commission. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, the driver of the vehicle violated Vehicle Code Section 23152 or 23153, that's driving under the influence or driving while under the influence and causing injury; [¶] Two, in addition to that violation, the driver of the vehicle committed, with gross negligence, an unlawful act not amounting to a felony, namely, a violation of . . . Vehicle Code Sections 22107 [failure to make safe lane change], 21662 [unsafe driving on mountain roads], 21650 [failure to drive on right side of road], 27315 [failure to ensure passengers wearing seat belts], 22350 [failure to drive at safe speed under the circumstances]or 22351 [failure to comply with posted speed] . . . dangerous to human life under the circumstances of its commission or committed with gross negligence, or an act ordinarily lawful which might cause death; [¶] And three, that unlawful act was a cause—that the unlawful act was a cause of the death of a human being."[2]

## B. *The Definition of "Unlawful" Killing*

Defendant notes that the court's instruction defined an "unlawful" killing in terms of the commission of the underlying acts: "A killing is unlawful when a person commits an unlawful act, not amounting to a felony, dangerous to human life under the circumstances of its commission, or commits an act ordinarily lawful, which might produce death, which unlawful act is a cause of the death of another human being." Citing *People v. Frye*

---

[2]CALJIC No. 8.93 is the standard instruction on GVMI. It reads, in pertinent part, "Every person who drives a vehicle [in a grossly negligent manner and] in violation of section [23140,] [23152,] [or] [23153] of the Vehicle Code, and unintentionally but unlawfully kills another human being, is guilty of the crime of [Gross] Vehicular Manslaughter While Intoxicated . . . . [¶] A killing is unlawful when a person [commits an unlawful act [not amounting to a felony] dangerous to human life under the circumstances of its commission,] [or] [negligently commits an act ordinarily lawful which might produce death,] which [unlawful] [or] [negligent] act is a cause of the death of another human being. [¶] [The commission of an unlawful act with gross negligence would necessarily be an unlawful act dangerous to human life under the circumstances of its commission.] [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. The driver of a vehicle violated Vehicle Code section [23140,] [23152,] [or] [23153]; [¶] 2. In addition to that violation, the driver of the vehicle [committed [with gross negligence] an unlawful act [not amounting to a felony], namely a violation of _____, dangerous to human life under the circumstances of its commission] [or] [committed [with gross negligence] [negligently] an act ordinarily lawful which might cause death]; and [¶] 3. That [unlawful] [or] [negligent] act was a cause of the death of a human being."

(1992) 7 Cal.App.4th 1148 [10 Cal.Rptr.2d 217], defendant claims the true meaning of "unlawful" is a killing without excuse or justification. Defendant claims the court erred in failing to instruct on this meaning. We disagree.

*Frye* involved a prosecution for murder and attempted murder. The trial court instructed the jury that a killing or attempted killing was unlawful unless it was either excusable or justifiable. It then said, " '[i]t is undisputed in this case that each of the acts in question was an unlawful act.' " (*People v. Frye, supra,* 7 Cal.App.4th at p. 1151.) On appeal, the defendant claimed the instruction directed a verdict on an element of unlawfulness.

■ In rejecting this claim, the court stated that "in connection with the use of violence against another person in a homicide case, the word 'unlawful' is a term of art" and refers to the absence of excuse or justification. (*People v. Frye, supra,* 7 Cal.App.4th at p. 1155.) The court explained that where the evidence shows a killing by force or violence and no more, the killing is by definition unlawful, and the defendant must raise a reasonable doubt by presenting some evidence of excuse or justification. If he or she does, then the prosecutor must disprove the defense beyond a reasonable doubt. (*People v. Frye, supra,* 7 Cal.App.4th at pp. 1154-1155; see § 189.5.[3])

With these principles in mind, the court further explained that where there is no evidence of excuse or justification, such concepts are irrelevant, and the court need not instruct the jury on them. Turning to the record, the court found that there was no evidence of excuse or justification, no reliance on either defense, and no objection to the court's instruction. The court further noted that the defendant conceded that the killing and attempt to kill were unlawful. Under the circumstances, the court found that the issue of unlawfulness was "superfluous" at trial. Thus, the court's instruction did not direct a verdict on material element of the offense. Rather, the instruction merely defined and explained terms that might have confused the jury. (*People v. Frye, supra,* 7 Cal.App.4th at pp. 1159-1160.)

■ There are material differences between a prosecution for murder and a prosecution for GVMI and the defenses available to both. Even if we assume that the phrase "unlawful killing" in section 191.5 ("Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought . . . .") includes the concept that a killing without excuse or justification is unlawful, that concept was not an issue in

---

[3]Section 189.5 provides, "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

this case. As in *Frye*, there was no evidence of excuse or justification, defendant did not rely on either defense,[4] and she did not object to the court's instruction. Moreover, here the court's instruction did not tell the jury that defendant's acts were unlawful acts. Under the circumstances, we find no deficiency in the court's instruction.

### C. *Committing a Lawful Act in an Unlawful Manner*

■ As set forth above, GVMI occurs where a killing results from the commission of either an unlawful act, not amounting to a felony, (i.e., a misdemeanor or infraction) with gross negligence, or "a lawful act which might produce death, *in an unlawful manner*, and with gross negligence." (§ 191.5, subd. (a), italics added.) Defendant contends the court misinstructed the jury on the second alternative because the instruction eliminated the requirement that the lawful act be performed "in an unlawful manner."

The trial court instructed the jury that a killing is unlawful when a person commits an unlawful act, not amounting to a felony, dangerous to human life under the circumstances of its commission, "*or commits an act ordinarily lawful, which might produce death, which unlawful act is a cause of the death of another . . . human being*." Then, in enumerating the elements of the offense, the court stated that "in addition to [violating sections 23152 or 23153], the driver of the vehicle committed, with gross negligence . . . an act ordinarily lawful which might cause death." Thus, as defendant correctly points out, the court did not describe the second alternate as a lawful act performed in *an unlawful manner*. Nevertheless, we find no error.

To help explain our conclusion, we first discuss what performing a lawful act in an unlawful manner means. This concept is not clearly separate and distinct from the concept of performing an unlawful act. Indeed, "the distinction between an 'unlawful act' and a 'lawful act' done in an 'unlawful manner' tends to disappear in the context of vehicular manslaughter." (*People v. Hansen* (1992) 10 Cal.App.4th 1065, 1075 [12 Cal.Rptr.2d 884].) As Witkin explains, for example, "driving at an excessive speed or in violation of other traffic rules can be viewed as an unlawful act or as a lawful act performed in an unlawful manner." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person § 531, p. 601.) Nevertheless, the latter concept does have independent meaning.

In *People v. Wilson* (1947) 78 Cal.App.2d 108 [177 P.2d 567], the defendant was convicted of negligent homicide in violation of section 192.

---

[4]The primary defense was that Traster was the driver. The alternative partial defense to GVMI was that defendant's conduct was not grossly negligent.

At that time former section 192 provided, in relevant part, "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] . . . [¶] 3. In the driving of a vehicle— [¶] (a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in, the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence. [¶] (b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." (Stats. 1945, ch. 1006, § 1, pp. 1942-1943, italics added; see § 192, subd. (c)(1), (2) [containing essentially same language].) On appeal the defendant noted that under section 20, all crimes require the concurrence of act and intent or "criminal negligence."[5] He claimed that former section 192, subdivision 3(b), was invalid because the language italicized above proscribed ordinary, rather than criminal, negligence. (People v. Wilson, supra, 78 Cal.App.2d at p. 112.)

In rejecting this claim, the court stated the following general rule: " '[W]hen a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life.' " (People v. Wilson, supra, 78 Cal.App.2d at p. 113, quoting People v. Wilson (1924) 193 Cal. 512, 518 [226 P. 5]; accord, People v. Pociask (1939) 14 Cal.2d 679, 684 [96 P.2d 788].)

Next, the court viewed former section 192, subdivision 3(b), in light of former section 195, which provided, in relevant part, "Homicide is excusable in the following cases: [¶] 1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."[6] (Italics added.) The court explained that a homicide resulting from the commission of a lawful act which might produce death in an unlawful manner, but without gross negligence, would not be excusable under section 195. Moreover, the act that caused the death would be an act of criminal negligence within the meaning of section 20. In seeking to harmonize section 20 and former sections 192 and 195, the court found it implicit in former

---

[5]Section 20 provides, "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

[6]Section 195 now provides, in relevant part, "Homicide is excusable in the following cases: [¶] 1. When committed by accident and misfortune, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."

section 192, subdivision 3(b), "that the commission in a negligent manner, but without gross negligence, of a lawful act which might produce death *would be the commission of the act in an unlawful manner,* since the act, if committed with usual and ordinary caution and without any unlawful intent, would be excusable under section 195." (*People v. Wilson, supra,* 78 Cal.App.2d at pp. 113-114, italics added.)

In *People v. DeSpenza* (1962) 203 Cal.App.2d 283, 291 [21 Cal.Rptr. 275], the court cited *Wilson* for the "prevailing rule" that ordinary negligent driving "is in itself an unlawful act" under the manslaughter statute. (Accord, *In re Dennis B.* (1976) 18 Cal.3d 687, 697 [135 Cal.Rptr. 82, 557 P.2d 514].) In *People v. Ross* (1956) 139 Cal.App.2d 706 [294 P.2d 174], the court considered speeding through an intersection evidence of either a total lack of attention or a disregard for the consequences of his speed. Citing *Wilson,* the court opined, "This evidence justifies an inference of negligence on the part of the operator of the vehicle. Thus defendant was doing a lawful act which might, and actually did, produce death, in an unlawful manner, . . ." (*Id.* at pp. 710-711.)

From these cases we glean the following: committing a lawful act in an unlawful manner simply means to commit a lawful act with negligence, that is, without reasonable caution and care. It follows, then, that in the context of vehicular manslaughter, a killing is unlawful either when one commits a misdemeanor or infraction (an unlawful act, not amounting to a felony) or when one commits a negligent act (a lawful act in an unlawful manner). Indeed, CALJIC No. 8.93 uses the phrase "negligently commits an ordinarily lawful act," instead of "commits a lawful act in an unlawful manner," to define "unlawful killing."

In light of our discussion, it is clear why the phrase "in an unlawful manner" and the word "negligently" are absent from the enumeration of elements in the court's instruction and CALJIC No. 8.93. Both instructions require the jury to find that the lawful act was committed with *gross* negligence. Such a finding would necessarily include a finding of simple negligence. Accordingly, the Supreme Court in *People v. Wells* (1996) 12 Cal.4th 979 [50 Cal.Rptr.2d 699, 911 P.2d 1374], stated, albeit in dicta, that even if the prosecution fails to prove that the defendant committed a Vehicle Code violation (i.e., unlawful act), the jury may still convict the defendant of gross vehicular manslaughter "if it finds that the defendant drove in a grossly negligent manner and, that this conduct was the proximate cause of a death." (*Id.* at p. 990, fn. 9.)

Under the circumstances, the failure to include the phrase "unlawful manner" or the word "negligently" in enumerating the elements of the

offense was not error. And although the court should have included one or the other in defining an "unlawful killing," the error was harmless under any standard of review.

## D. *The Dangerousness Requirement*

As defined by section 191.5, subdivision (a), one alternative element of GVMI is that the killing be the result of "an unlawful act, not amounting to a felony" committed with gross negligence. In *Wells,* the court held that the identical element in section 192, subdivision (c)(1) [gross vehicular manslaughter] requires that the unlawful act be "dangerous under the circumstances of its commission." (*People v. Wells, supra,* 12 Cal.4th at p. 982.)

■ Defendant argues that "[a]lthough there does not appear to be any specific case deciding the point, it is logical that this same dangerous requirement to human life be applicable to the second alternative (i.e., a lawful act done in an unlawful manner)." Thus, she contends that in defining the "lawful act/unlawful manner" alternative element, the court erred in failing to say that the lawful act must be dangerous to human life under the circumstances of its commission. Again we find no error.

In *Wells,* the court followed *People v. Stuart* (1956) 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705], where it previously construed the statutory phrase "unlawful act not amounting to [a] felony" to include the common law requirement that the unlawful act be dangerous to life or safety. (*People v. Wells, supra,* 12 Cal.4th at pp. 984-986.) However, the lawful act/unlawful manner alternative element is expressed in different statutory language: "the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (§ 191.5, subd. (a).)

Gross negligence involves aggravated, reckless, or flagrant disregard for human life, or indifference to the consequences of one's conduct. (See *People v. Alonzo* (1993) 13 Cal.App.4th 535, 539-540 [16 Cal.Rptr.2d 656].) The court here specifically instructed the jury to consider the circumstances surrounding the commission of defendant's conduct in determining whether death was reasonably foreseeable.[7] (See *People v. Wells, supra,* 12 Cal.4th at p. 990, and fn. 8.) The GVMI instruction also required the jury to find that

---

[7]The court instructed the jury, "Gross negligence means conduct which is more than ordinary negligence. Negligence is the failure to exercise ordinary or reasonable care. [¶] Gross negligence, on the other hand, refers to a negligent act or acts which are aggravated, reckless or flagrant, and which are such a departure from that which would be the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to the proper regard for human life, or to constitute indifference to the consequences of those acts. [¶] The facts must be such that the consequences of the negligent act or acts could reasonably

the grossly negligent conduct be such as "might produce death." In our view, conduct that makes death reasonably foreseeable and that "might produce death" is by definition conduct dangerous to life or safety. In effect, therefore, the court's GVMI and gross negligence instructions required the jury to find that defendant's conduct was dangerous to human life under the circumstances of its commission. Consequently, we find no instructional inadequacy in this regard.

## E. *Lawful Act and Proximate Cause*

Defendant contends that in connection with the lawful act/unlawful manner alternative element, the court erred in failing to instruct the jury that such conduct had to be a cause of Traster's death. The record supports defendant's claim.

The court defined an unlawful killing as follows: "when a person commits an *unlawful act*, not amounting to a felony dangerous to human life under the circumstances of its commission, or commits an act ordinarily lawful, which might produce death, which *unlawful* act is a cause of the death of another . . . human being." As defendant correctly points out, the last clause refers only to an unlawful act being a cause of death and does not expressly state, or make explicitly clear, that, alternatively, the commission of a lawful act in an unlawful manner must be a cause of death. The court reiterated the mistake by telling the jury that the prosecution had to prove the following: that (1) while defendant was driving under the influence, (2) she committed either an unlawful act or a lawful act with gross negligence, and (3) "the *unlawful* act was a cause of the death of a human being."[8]

Theoretically, the omissions did not make the GVMI instruction incomplete because both the commission of an unlawful act and the commission of

---

have been foreseen, and it must appear that the death was not the result of inattention, mistake in judgment or misadventure, but the natural and probable result of an aggravated, reckless or flagrantly negligent act." (See CALJIC No. 3.36.)

The court also instructed the jury, "The mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient in itself to constitute gross negligence. [¶] You must determine gross negligence from the level of the defendant's intoxication, the manner of driving or other relevant aspects of the defendant's conduct resulting in this—in the fatal accident." (See CALJIC No. 8.94.)

[8]We also note that the court's instruction on legal causation contains a similar omission. The court stated, "To constitute the crime of vehicle—gross vehicular manslaughter, under Section 191.5(a) of the Penal Code, there must be, in addition to the death of a human being, an *unlawful* act or omission which was the cause of that death. [¶] Criminal law has its own particular way of defining cause. A cause of death is an act or omission that sets in motion a chain of events that produces, as a direct natural and probable consequences of that act or omission, the death, and without which the death would not occur. [¶] When a person commits an act or omission through admission or by act under the circumstances that show neither criminal intent or purpose, nor criminal negligence, she does not hereby commit a crime. [¶] To constitute manslaughter, there must be, in addition to the death of a human

a lawful act in an unlawful manner are unlawful acts in the context of vehicular manslaughter. Thus, the instruction correctly states that the unlawful act must be a cause of death. However, because the statute refers to both the commission of an unlawful act and the commission of a lawful act in an unlawful manner, a reasonable juror is not likely to interpret the phrase *unlawful act* as referring to both types of conduct.[9] (See *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [112 S.Ct. 475, 482, 116 L.Ed.2d 385]; *People v. Mayfield* (1997) 14 Cal.4th 668, 776 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *People v. McCart* (1982) 32 Cal.3d 338, 344 [185 Cal.Rptr. 284, 649 P.2d 926] [a word or phrase repeated in a statute generally given the same meaning throughout].) Thus, in the abstract, a jury could convict without finding that negligent driving (lawful act/unlawful manner) was a cause of death. Returning to the real world, we find the instructional omission harmless. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].)

First, the issue of causation was undisputed. Defendant essentially conceded that the driver's conduct caused Traster's death. Thus, regardless of whether defendant's driving could be characterized as either unlawful conduct or lawful conduct performed in an unlawful manner, the evidence established beyond rational dispute that her conduct was a cause, if not the cause, of Traster's death.

Second, the prosecution relied exclusively on the theory that defendant committed an unlawful act, specifically, numerous Vehicle Code violations: failing to make a safe lane change, driving unsafely on a mountain road, failing to drive on the right side of the road, failing to ensure that Traster was wearing a seat belt, failing to obey the basic speed law, and failing to comply with the posted speed. (See Veh. Code, §§ 22107, 21662, 21650, 27315, 22350, and 22351.) The prosecutor did suggest one scenario that might support a finding that defendant committed a lawful act in an unlawful manner: her speed was safe under the current conditions and, therefore, did not violate the basic speed law. However, the prosecutor urged the jury to reject this analysis because "[t]hat speeding, you should find is a violation. I don't care how straight the road was or how dry the conditions were; 55 is too fast, let alone 55 when there are kids around, let alone 55 when you're point .20, and you have drugs [in] your system."

being, an *unlawful* act, which was the cause of that death." (See CALJIC Nos. 3.40, 4.45, 8.55.)

[9]The court did not make the same omission when it instructed on the lesser included offenses of gross vehicular manslaughter while not intoxicated (§ 192, subd. (c)(1)), simple vehicular manslaughter while intoxicated (§ 192, subd. (c)(3)), and simple vehicular manslaughter while not intoxicated (§ 192, subd. (c)(2)), all of which require the commission of either an unlawful act or a lawful act in an unlawful manner.

Third, to convict defendant, the jury had to find only one of the alleged Vehicle Code violations. However, there was strong evidence that defendant committed all alleged violations and that together—the speeding and driving unsafely on a mountain road, the swerving into and then driving in the oncoming lane, and the failure to have Traster wear a seat belt—combined in a rapid and continuous sequence of events to cause the crash that killed Traster. On the other hand, the record contains little, if any, evidence that defendant committed a lawful act in an unlawful manner apart from, or as opposed to, a Vehicle Code violation. Indeed, given the undisputed evidence of defendant's driving, it is highly unlikely the jury could or would have made such a finding.

Under the circumstances, we find no reasonable possibility that the court's instruction led the jury to convict defendant of GVMI without also finding that her conduct was a cause of Traster's death. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1034 [68 Cal.Rptr.2d 655, 945 P.2d 1204].) Stated differently, we are satisfied beyond a reasonable doubt that the omission here did not contribute in any way to the verdict.

### F. *Mandatory Presumption of Dangerousness*

 As noted, the court's GVMI instruction stated, "A killing is unlawful when a person commits an unlawful act, not amounting to a felony, dangerous to human life under the circumstances of its commission, or commits an act ordinarily lawful, which might produce death, which unlawful act is a cause of the death of another human being. [¶] *The commission of an unlawful act with gross negligence would necessarily be an unlawful act dangerous to human life, under the circumstances of its commission.*" Defendant contends that the italicized language represents a constitutionally impermissible mandatory presumption concerning the dangerousness element of the offense. We disagree.

The challenged language comes from *People v. Wells, supra,* 12 Cal.4th 979. To explain it, we discuss *Wells* in more detail. There, the defendant was convicted of gross vehicular manslaughter. (§ 192, subd. (c)(1).) At trial, the court instructed the jury on various Vehicle Code violations, including speeding (see Veh. Code, § 22349), and defined an "unlawful act" as one that is *inherently* dangerous to human life or safety. The court then said that each of the alleged Vehicle Code violations was inherently dangerous. The Court of Appeal reversed because it found that speeding was not inherently dangerous and therefore could not constitute the "unlawful act" element of the offense. The Supreme Court reversed the Court of Appeal, holding, "[T]he offense which constitutes the 'unlawful act' need not be an inherently

dangerous misdemeanor or infraction. Rather, to be an 'unlawful act' within the meaning of section 192(c)(1), the offense must be dangerous under the circumstances of its commission. *An unlawful act committed with gross negligence would necessarily be so.*" (12 Cal.4th at p. 982, fn. omitted, italics added.)

The court focused on the statutory phrase "unlawful act not amounting to [a] felony," which, as noted, it had previously construed in *People v. Stuart, supra,* 47 Cal.2d 167 to include the common law requirement that the unlawful act be dangerous to life or safety. In *Wells,* the Court of Appeal erroneously read *Stuart* to require that the unlawful act be *inherently* dangerous. However, as the Supreme Court explained, *Stuart* said no such thing. "*Stuart* does not require an act 'inherently dangerous in the abstract' for any form of manslaughter. It merely requires that the unlawful act causing death be committed 'through criminal negligence.'" (*People v. Wells, supra,* 12 Cal.4th at p. 988, citing *People v. Stuart, supra,* 47 Cal.2d at p. 174.)

To support its conclusion, the court cited the following passage from *Thiede v. State* (1921) 106 Neb. 48 [182 N.W. 570, 15 A.L.R. 237]: "'We believe the rule to be that, though the act, made unlawful by statute, is an act merely malum prohibitum and is ordinarily insufficient [to support a manslaughter conviction], still, when such an act is accompanied by negligence or further wrong, so as to be, in its nature dangerous, or so as to manifest a reckless disregard for the safety of others, then it may be sufficient to supply the wrongful intent essential to criminal homicide, and, when such act results in the death of another, may constitute involuntary manslaughter.'" (*People v. Wells, supra,* 12 Cal.4th at p. 987; *Thiede v. State, supra,* 182 N.W. at p. 572.)

In sum, *Wells* teaches that where a misdemeanor or infraction causes a death, criminal culpability for manslaughter arises from the dangerous manner in which it was committed and not the inherent nature of the proscribed act.

After settling this issue, the *Wells* court discussed the trial court's instruction that speeding was an inherently dangerous offense. The court found the instruction erroneous but deemed the error harmless because "[o]ther instructions ensured that the jury necessarily found all of the elements of vehicular manslaughter in returning its verdict. In particular, with regard to criminal culpability, the court instructed the jury that it was required to determine that [the] defendant's conduct constituted gross negligence in the circumstances. Therefore, under the instructions given, the jury necessarily

found that [the] defendant drove his vehicle in a manner which constituted a Vehicle Code misdemeanor or infraction; that he was grossly negligent under the circumstances in which the violation was committed; and that, as a result of his conduct, a death occurred. Nothing more was required for conviction under section 192(c)(1)." (*People v. Wells, supra*, 12 Cal.4th at pp. 989-990, fn. omitted.)

The court's analysis reveals why, in the context of vehicular manslaughter, it opined that an unlawful act committed with gross negligence would, as a matter of law, be an offense dangerous under the circumstances of its commission. Among the other instructions given was one on gross negligence, which requires a finding that death be a reasonably foreseeable consequence of the negligence conduct. (See CALJIC No. 3.36.) Simply put, where death is a reasonably foreseeable consequence of an unlawful act committed while driving, the underlying conduct is necessarily dangerous to human life.

Defendant disagrees with the Supreme Court's view. She argues, "There can be many situations where someone may do an unlawful act in a grossly negligent manner, yet not be dangerous to human life. For example, someone could deliberately throw an unlit cigarette out of a vehicle, deliberately drive a vehicle knowing that his or her privilege to drive has been suspended or revoked, or deliberately drive a vehicle knowing that he or she does not have his or her license in possession. Each of these unlawful acts could have been done with gross negligence, but at the same time it would not have been inherently dangerous to human life." This argument is meritless. First, as discussed above, the "unlawful act" need not be *inherently* dangerous. Second, we doubt that any of the suggested unlawful acts could be performed with gross negligence because it is difficult to imagine a manner of committing them that would make death reasonably foreseeable. However, if, for example, one did toss an unlit cigarette in a way that made another's death reasonably foreseeable, then a finding of gross negligence would necessarily include an implied finding that the unlawful act was dangerous to human life under the circumstances of its commission.

We now turn to defendant's claim that the challenged instructional language constituted an impermissible mandatory presumption. We think not.

A mandatory presumption, in effect, removes an element from the jury's consideration and thereby lessens the prosecution's burden to prove beyond a reasonable doubt every element of the charged offense. Instructions that relieve the state's burden violate state and federal constitutional guarantees of due process and the rights to a jury trial and proof beyond a

reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 522-523 [115 S.Ct. 2310, 2319-2320, 132 L.Ed.2d 444]; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182]; *Carella v. California* (1989) 491 U.S. 263, 265 [109 S.Ct. 2419, 2420, 105 L.Ed.2d 218]; *People v. Flood* (1998) 18 Cal.4th 470, 481-482, 491 [76 Cal.Rptr.2d 180, 957 P.2d 869]; *People v. Kobrin* (1995) 11 Cal.4th 416, 423 [45 Cal.Rptr.2d 895, 903 P.2d 1027].)

For example, in *People v. Flood, supra,* 18 Cal.4th 470, the defendant was convicted of violating Vehicle Code section 2800.3, which proscribes evading a vehicle operated by a pursuing peace officer and causing serious bodily injury. To establish this offense, the prosecution must prove, among other things, that the vehicle the defendant attempted to evade was driven by a uniformed "peace officer." In instructing the jury, however, the trial court told the jury that the police officers who chased the defendant were "peace officers." The California Supreme Court found that this instruction effectively removed an element of the offense from the jury's consideration and directed a verdict on it. (18 Cal.4th at pp. 475-479, 491-504; cf. *People v. Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680] [error to instruct that the promissory notes sold by the defendant were "securities" as defined by law].)

In contrast to the instruction in *Flood,* is that given in *People v. Brown* (1988) 46 Cal.3d 432 [250 Cal.Rptr. 604, 758 P.2d 1135], certiorari denied (1989) 489 U.S. 1059 [109 S.Ct. 1329, 103 L.Ed.2d 597]. There, the defendant was charged with murder, with the special circumstance that the victim was an on-duty "peace officer." The trial court instructed the jury that " 'a Garden Grove Regular Police Officer and a Garden Grove Reserve Police Officer are peace officers.' " (46 Cal.3d at p. 443, italics omitted.) Our Supreme Court upheld the instruction, finding that it did not remove an element of the special circumstance allegation from the jury's consideration. Rather, as the court explained, the challenged instruction "merely instructed the jury on a point of statutory law—a point not open to dispute—that a Garden Grove police officer is a peace officer. [Citations.] The jury was left to make all essential factual determinations, including whether the victim was a Garden Grove police officer." (*Id.,* at pp. 443-444, fn. omitted; cf. *People v. Runnion* (1994) 30 Cal.App.4th 852 [36 Cal.Rptr.2d 203] [upholding instruction that "firearm" includes handgun].)

 The instruction here is akin to that given in *Brown* rather than that in *Flood.* As in *Wells,* the other instructions given here required the jury to make all essential factual determinations to convict defendant of GVMI, including whether she committed a particular Vehicle Code violation and

whether she did so with gross negligence. Thus, the challenged instructional language did not remove any element from the jury's consideration or lighten the prosecution's burden. Rather, as discussed above, it simply stated a point of law not subject to dispute.[10]

IV. *Instructional Claims Concerning Alleged Vehicle Code Violations*

Defendant contends that the court made several errors in the course of instructing the jury on three alleged Vehicle Code violations that could serve as the predicate unlawful act for GVMI.

A. *Vehicle Code Section 22107*

In instructing the jury on Vehicle Code section 22107, which proscribes unsafe lateral movements, the court relied on the statutory language and stated: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety; and then, only after the giving of an appropriate signal *in the manner provided by this chapter, or* [*sic*] in the event any other vehicle may be affected by the movement." (Italics added.)

Defendant claims the court erred in (1) failing to explain the meaning of "in the manner provided by this chapter" and (2) adding the word "or," which does not appear in the statute. She asserts that other sections of the same chapter indicate that Vehicle Code section 22107 requires an "appropriate signal" only when a driver is making a "true" left or right turn. She argues that the error could have led the jury to mistakenly believe that an appropriate signal was required when merely changing lanes and not making a turn.

This claim fails because the statute is not limited to true left or right turns. Rather, by its express terms, the statute applies to *any movement* to the left or right from a direct course, and this is generally understood to include moving from one's lane. (See, e.g., *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1366, fn. 6 [85 Cal.Rptr.2d 788]; *People v. Weems* (1997) 54 Cal.App.4th 854 [62 Cal.Rptr.2d 903]; *People v. Garcia* (1993) 17 Cal.App.4th 1169 [22 Cal.Rptr.2d 545]; *People v. Gonzalez* (1992) 7 Cal.App.4th 381 [8 Cal.Rptr.2d 640]; *Nevarov v. Caldwell* (1958) 161 Cal.App.2d 762 [327 P.2d 111].) Thus, in *People v. Smylie* (1963) 217

---

[10]Given our discussion of the origin and meaning of the challenged instructional language, we consider it superfluous in the context of gross vehicular manslaughter and question whether it should be included in the standard CALJIC instruction. (See *People v. Moore* (1997) 59 Cal.App.4th 168, 181, fn. 15 [69 Cal.Rptr.2d 56].)

Cal.App.2d 118, 121 [31 Cal.Rptr. 360], the defendant violated the statute when he veered from his lane off the road and hit a pedestrian.[11]

## B. *Vehicle Code Section 21662*

 In instructing the jury on Vehicle Code section 21662, which proscribes unsafe mountain driving, the court again used the language of the statute: "The driver of a motor vehicle traveling through defiles or canyons on upon mountain highways shall hold the motor vehicle under control at all times."[12] Defendant claims there was no evidence to support the instruction. She notes that the accident occurred "half-way along a 1,000 foot flat, straight stretch of road." Thus, at the time of the accident, she was not driving in a defile (i.e., narrow valley or mountain pass), a canyon, or a mountain road. According to defendant, the statute, as it relates to mountain roads, applies only "where the road [is] going significantly up or down or otherwise around a mountainous curve in the road." This claim is also meritless.

Officer Dane Lobb of the California Highway Patrol testified that Summit Road in the area of the accident "could best be describe[d] as a mountainous roadway, traveling through, or across the ridge top of the Santa Cruz Mountains, and through a series of valleys and different canyons. It travels up and down. It curves to the left and to the right at various locations as you travel along it. [¶] Traveling away from Highway 17 in an easterly direction and conversely the opposite traveling westerly direction [*sic*], it tends to travel more downward than upward, as you're traveling east along it." Officer Tamary Bogard of the California Highway Patrol testified that the road within 500 feet of the accident in both directions was straight and then resumes the twists and turns normally associated with a mountain road.

The foregoing testimony constitutes substantial evidence that Summit Road is a mountain road within the meaning of the statute and thus supports the trial court's instruction. (See *People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197] [general duty to instruct on principles of law relevant to the issues when supported by the evidence]; e.g., *People v. Martin* (1955) 136 Cal.App.2d 709 [289 P.2d 69].)

Defendant cites, and we are aware of, no authority for the proposition that the statute does not apply to straight, flat segments of a mountain road.

---

[11]Defendant does not point to evidence that she made an appropriate signal or that it was safe under the circumstances to swerve into the oncoming lane. Nor does she claim there is insufficient evidence to support a violation of the statute.

Defendant also does not explain how the inadvertent insertion of "or" might have been prejudicial. Thus, we consider it unnecessary to discuss it.

[12]The statute has other provisions, but none are pertinent here.

Moreover, the statute is not reasonably susceptible to this interpretation. It requires that a driver maintain control of a vehicle on mountain highways "at all times," not just when the highway is curving or twisting or going up or down hill. In this way, the statute achieves its obvious purpose: to ensure safe vehicular traffic on mountain roads, canyons, and defiles. Defendant's view leads to absurd results inconsistent with this purpose, in that, a driver's duty to control a vehicle on a road through the mountains would come and go depending on the topography surrounding the road at a particular point. Such a view unnecessarily raises further questions concerning the meaning of flat and straight and how long a road must be flat and straight before the duty to control one's vehicle is suspended. (See *People v. Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527] [statute should not be interpreted in a manner that leads to absurd results].)

Defendant's reliance on *Elford v. Hiltabrand* (1944) 63 Cal.App.2d 65 [146 P.2d 510] does not assist her claim. There, the trial court *refused* to give the instruction given here. On appeal, the court found no error because unlike here, there was insufficient testimony or documentary evidence to support a finding that the road in question was a mountain road.

## C. *Vehicle Code Section 27315*

Concerning Vehicle Code section 27315, the mandatory seat belt law, the court, using statutory language, instructed the jury as follows: "No person shall operate a private passenger motor vehicle on a highway, unless *that person* and all passengers 16 years of age or over are properly restrained by a safety belt." Defendant contends the court erred in referring to the driver's failure to wear a seat belt. Although such a failure violates the statute, defendant claims that it cannot constitute an "unlawful act" under the GVMI statute because it "cannot cause an accident, cannot directly impair the ability of one to drive a car in a manner so as to avoid an accident, and cannot proximately cause bodily injury to someone other than the driver operating the vehicle."

First, there is no requirement that the unlawful act *cause* the accident or impair the driver's ability to operate the car. Rather, the "unlawful act" need only be a cause of another person's death. (See *People v. Weems, supra,* 54 Cal.App.4th at pp. 859-860 [rejecting assertion that "unlawful act" must cause the accident, relate to careless driving, or impair ability to avoid accident].)

Second, we do not agree with defendant that a violation of the statute by the driver cannot, as a matter of law, satisfy the "unlawful act" element of

GVMI. As the People point out, during an accident, an unbelted driver could fly around inside the vehicle and kill a passenger. Similarly, the driver could be ejected from the vehicle and kill a bystander. Defendant's reliance on *People v. Capetillo* (1990) 220 Cal.App.3d 211 [269 Cal.Rptr. 250] does not persuade us otherwise. There, the underlying violation was driving a vehicle without the owner's permission. As this court explained in *People v. Weems, supra*, 54 Cal.App.4th at p. 862, the failure to obtain permission to drive could not conceivably cause injury to another; nor does it increase the risk of harm to others.

Nevertheless, we agree that there is insufficient evidence that defendant's failure to wear a seat belt caused Traster's death. Thus, the instruction presented the jury with a factually erroneous theory of conviction: a theory that is consistent with the law but not supported by the evidence. (See *People v. Harris* (1994) 9 Cal.4th 407, 436 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) The error, however, does not compel reversal "unless, on the record made at trial, the reviewing court determines that the conviction actually, and solely, rests on the factually erroneous theory." (*Ibid.*; *People v. Guiton* (1993) 4 Cal.4th 1116, 1126-1131 [17 Cal.Rptr.2d 365, 847 P.2d 45].) Such is not the case. Indeed, during closing argument, defense counsel conceded that both Traster and defendant were not wearing seat belts. Moreover, there is ample evidence defendant's failure to ensure that *Traster* wore a seat belt was a proximate cause of his death. There is also ample evidence of the other alleged Vehicle Code violations and that those violations too were proximate causes of Traster's death. Under the circumstances, therefore, the record does not indicate that the jury's verdict rested *solely*, if at all, on a finding that defendant failed to wear a seat belt.

## V. *Instructional Duplication of Elements*

To violate section 191.5 (GVMI), one must drive in violation of certain Vehicle Code sections, among them Vehicle Code section 23153 (driving under the influence and causing injury), and while doing so commit an unlawful act that causes death with gross negligence. In *People v. Soledad* (1987) 190 Cal.App.3d 74, 81 [235 Cal.Rptr. 208], the trial court instructed the jury that to convict the defendant, it had to find, among other things, that he violated Vehicle Code section 23153, and " 'committed an unlawful act, to wit, a violation of Section 23153 . . . .' " (190 Cal.App.3d at p. 81.) The court did not instruct on any other Vehicle Code violations that might satisfy the "unlawful act" element. Thus, the court's instruction permitted the jury to make dual use of a single violation of Vehicle Code section 23153. On appeal, the court concluded that such dual use was error because, in effect, it eliminates the "unlawful act" element of gross vehicular manslaughter. (190 Cal.App.3d at p. 82.)

Defendant notes that both section 191.5 and Vehicle Code section 23153 have as alternative elements the commission of an unlawful act.[13] She points out that in instructing on both offenses, the court used the same list of alleged Vehicle Code violations as possible unlawful acts. Thus, as instructed, the jury could, for example, find defendant's unsafe lane change, in violation of Vehicle Code section 22107, to be the requisite unlawful act for both offenses. Defendant considers this an "improper duplicate use of elements." Citing *Soledad*, she argues that "[s]ince a violation of [Vehicle Code section 23153] cannot duplicate as the unlawful act element of [GVMI], it necessarily follows that any part of the unlawful act element in [Vehicle Code section 23153] cannot also be duplicately [*sic*] used as part of the unlawful act element in the offense of [GVMI]."

We disagree with defendant's logic. The analysis in *Soledad* does not suggest that there is, or should be, a prohibition against using the same misdemeanor or infraction to establish both the unlawful act element of GVMI and Vehicle Code section 23153. Nor does defendant suggest a policy reason for such a prohibition. Indeed, such dual use does not eliminate any element of GVMI, and the instructions expressly required the jury to find all elements of GVMI, including a violation of Vehicle Code section 23153 *and* an unlawful act, not amounting to a felony.

Moreover, we note that a conviction for GVMI may also be based on a violation of Vehicle Code section 23152 or 23140. Like section 23153, these sections require driving under the influence; but unlike section 23153, these sections do not contain an "unlawful act" element. Thus, the apparent purpose of requiring a violation of any one of these three sections is to ensure a finding that the defendant was driving under the influence. The "unlawful act" element of Vehicle Code section 23153, which is not shared by the other two sections, is of secondary importance. Indeed, it is redundant because section 191.5 makes it a separate element apart from the violation Vehicle Code sections 23140, 23152, and 23153. Given our analysis, we see no unfairness in permitting the jury to base two "unlawful act" findings on the same underlying conduct.

## VI.-XIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[13]Whereas section 191.5 requires "an unlawful act, not amounting to a felony," Vehicle Code section 23153 requires "any act forbidden by law." For purposes of discussion, we refer to both statutory requirements as the "unlawful act" element.

*See footnote, *ante*, page 40.

## XIV. *Disposition*

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

A petition for a rehearing was denied April 14, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 12, 2000.