Filed 12/23/25  P. v. Silva CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101421 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE009090) |
| v. | |
| JOHN SILVA, | |
| Defendant and Appellant. | |

The trial court denied defendant John Silva's petition for mental health diversion under Penal Code section 1001.36.[1]  Silva subsequently pleaded no contest to felony evasion and possession of fentanyl for sale, and the court sentenced him to five years four months in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, Silva contends that the trial court erred in ruling that he was ineligible and unsuitable for mental health diversion. We conclude that Silva has failed to show that the court abused its discretion in determining that he was unsuitable for diversion. We therefore affirm the judgment.

BACKGROUND

In June 2023, law enforcement officers attempted to initiate a traffic stop after they noticed Silva's car changing lanes without a turn signal and failing to stop at a red light. The officers activated their siren and lights, and Silva fled in his car, leading law enforcement on a 31-mile chase. Silva drove slower than the posted highway speed limit of 65 miles per hour for most of the chase, but at times reached speeds in the "mid-70s." During the pursuit, Silva swerved between highway lanes and threw plastic bags containing white powder out of the car's window.

Using a spike strip, officers eventually pulled Silva over and found large quantities of suspected narcotics, which police later determined were heroin and fentanyl. Silva told the officers that he had fled because he wanted to kill himself.

The People charged Silva with willfully evading a marked patrol car with wanton disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)), possession of heroin for sale (Health & Saf. Code, § 11351), and possession of fentanyl for sale (Health & Saf. Code, § 11351). The information further alleged that Silva had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Silva moved for pretrial mental health diversion under section 1001.36. His motion included an assessment from Cristina Rainwater, a mental health professional. Rainwater's report detailed Silva's mental health and substance abuse history and concluded that his symptoms were consistent with diagnoses of schizoaffective disorder, depressive type; substance-induced psychotic disorder; severe amphetamine-type substance use disorder; and severe opioid use disorder. His symptoms included depression, hopeless thoughts, difficulty sleeping, paranoia, general anxiety, and auditory

2

hallucinations. Silva told Rainwater that during the police chase he was "trying to find a bridge to go off of" to commit suicide.

Rainwater reported that Silva had a significant history of substance use. He had been using heroin for 40 years and methamphetamine for 20. Silva stated that he smoked methamphetamine two to three times per week while driving and used fentanyl and heroin daily. At the time of the evaluation, Silva indicated he was taking medication for depression and auditory hallucinations. He also indicated that he had previously received treatment for his substance abuse. Rainwater opined that, although Silva had "[n]o recent history of elevated risk factors," he did "have a history of suicide attempts, violence, or threats, which may be associated with a disorganized mental state or substance abuse," and she had concerns that Silva risked thoughts of harm without a plan to address his mental health and substance abuse issues. Rainwater recommended that Silva be referred to moderate-intensity specialty mental health services. She further opined that Silva was at risk of relapse if released without support.

The People opposed diversion, arguing that Silva was neither eligible nor suitable. They argued he was ineligible because his mental health condition lacked a sufficient nexus to the underlying offenses; they maintained he was unsuitable because he posed an unreasonable risk of danger to public safety. The People urged that the underlying evasion count reflected inherently dangerous conduct that could have killed innocent people.

The People also highlighted Silva's criminal history, which included multiple convictions for drug sales and robbery with a firearm. Silva had a 2019 conviction for evasion and driving under the influence in which he collided with another vehicle and injured the other driver. During that incident, Silva hit a car on the freeway then evaded police by running three stop signs and driving up to 75 miles per hour through various Sacramento neighborhood streets. Silva admitted to police that he had used heroin prior to the incident.

After considering the parties' written and oral submissions, the trial court denied Silva's application for diversion, finding: "[The] trafficking of narcotics is not a result of the person's addiction; it's a way of life. It's a way of supporting oneself and making money however that is. And that the evasion here was good old-fashioned trying to get away from the cops. And I don't think it was caused by a mental illness or addiction as much or at all frankly, but instead because he had narcotics with him. [¶] It's alleged he threw some substances out the window but then was caught with large quantities of both heroin and fentanyl. And he does have a recent prior for evading officers. So, I don't think it to be just a coincidence that here he was again doing this. [¶] I do certainly share the concerns of the People in terms of the danger that, you know, wanton and reckless disregard when evading and the public and the danger that's presented. And so I do think there is a certainly profound risk to the community that could also result in loss of life." In the court's view, this case "was just too serious for the [c]ourt to grant diversion."

Silva pleaded no contest to evasion and possession of fentanyl for sale and admitted the prior strike allegation. The trial court sentenced Silva to five years four months in state prison.

Silva timely appealed, and the trial court granted his request for a certificate of probable cause.

## DISCUSSION

Section 1001.36 authorizes a trial court to grant mental health diversion to defendants who satisfy the eligibility and suitability requirements set forth in the statute. (§ 1001.36, subd. (a).) A defendant is "eligible" for diversion if he or she has been diagnosed with a qualifying mental disorder and that disorder "was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1) & (2).) "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal

4

factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

A defendant is "suitable" for diversion if the defendant's symptoms would respond to mental health treatment, the defendant consents to diversion and waives the right to a speedy trial, the defendant agrees to comply with treatment as a condition of diversion, and the "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(1)-(4).) Under section 1170.18, subdivision (c), an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Those violent felonies, commonly referred to as "super strikes," include "[a]ny homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive." (§ 667, subd. (e)(2)(C)(iv)(IV); see *People v. Graham* (2024) 102 Cal.App.5th 787, 795.) The covered homicide offenses include gross vehicular manslaughter while intoxicated and vehicular manslaughter while intoxicated. (§§ 191.5, 667, subd. (e)(2)(C)(iv)(IV).) In determining whether a defendant poses an unreasonable risk of danger to public safety, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

We review a trial court's denial of mental health diversion for abuse of discretion. (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 401-402.) A " 'court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not demonstrate an abuse of

discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) Nor does the existence of contrary evidence provide a basis to supplant a trial court's supported findings. (See *People v. Brown* (2024) 101 Cal.App.5th 113, 123-124; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1086.)

In this case, Silva contends that the trial court abused its discretion in finding him ineligible and unsuitable for diversion. We conclude that substantial evidence supports the court's determination that Silva posed an unreasonable risk of danger to public safety and was therefore unsuitable for mental health diversion. In light of that conclusion, we need not address Silva's challenge to the court's eligibility finding.

As noted above, vehicular manslaughter while intoxicated under section 191.5 is an enumerated "super strike" under section 667, subdivision (e)(2)(C)(iv). Substantial evidence in the record supports the trial court's implied finding that Silva posed an unreasonable risk of committing that offense. The record shows that Silva admitted that he smoked methamphetamine two to three times per week while driving and used fentanyl and heroin daily. While carrying substantial quantities of drugs, he ran a red light, swerved between highway lanes, and led law enforcement on a 31-mile chase to evade arrest. (See *People v. Thompson* (2000) 79 Cal.App.4th 40, 57 [speeding, swerving into and driving in the oncoming lane, and failing to have passenger wear seat belt were requisite acts for vehicular manslaughter while intoxicated conviction].) Silva had a prior conviction for evasion and driving under the influence from 2019 where he drove up to 75 miles per hour in residential areas of Sacramento. (See *People v. David* (1991) 230 Cal.App.3d 1109, 1115 [prior convictions "admissible to show the accused's awareness of the life threatening risks of driving under the influence"].) There was also evidence in the record that Silva had been abusing drugs for decades and that prior substance abuse treatment had failed. Under these circumstances, there was substantial evidence to support a finding that, if treated in the community, Silva would continue to abuse drugs, drive under the influence, violate traffic laws, and evade law enforcement—

6

all creating an unreasonable risk that he would commit vehicular manslaughter while intoxicated.

DISPOSITION

The judgment is affirmed.


      /s/                 
FEINBERG, J.

We concur:


      /s/              
DUARTE, Acting P. J.


      /s/              
BOULWARE EURIE, J.