[No. F006695. Fifth Dist. Mar. 10, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY RAY SOLEDAD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—Defendant, Timothy Ray Soledad, was charged by information as follows: Counts I-III—vehicular manslaughter with gross negligence involving alcohol (Pen. Code, § 192, subd. (c)(3)),[1] count IV—driving while under the combined influence of alcohol and a drug causing injury (Veh. Code, § 23153, subd. (a)) and count V—driving with a blood alcohol level of 0.10 causing death and bodily injury (Veh. Code, § 23153, subd. (b)). The district attorney then amended the information to allege two prior convictions (Veh. Code, §§ 23152, subd. (a) and 23152, subd. (b)). Defendant admitted the prior convictions.

After jury trial, defendant was found guilty on all counts. On the same date, the court conducted a hearing to clarify a discrepancy in the verdicts and the court held the five guilty verdicts were true verdicts.[2]

At the sentencing hearing, the court denied defendant probation and sentenced him to state prison for the upper term of eight years on count I.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The People concede defendant was erroneously convicted of violating Vehicle Code section 23153, subdivisions (a) and (b) in light of the 1983 amendments to that statute and section 192. Under the amended statutes, persons who drive under the influence of drugs or alcohol and cause the death of another may only be convicted of vehicular manslaughter. (*Review of Selected 1983 California Legislation* (1984) 15 Pacific L.J. 411, 541-543; *People* v. *Rocha* (1978) 80 Cal.App.3d 972, 976 [146 Cal.Rptr. 81].)

The court also imposed the upper term of eight years on counts II and III and the upper term of three years on counts IV and V. The court stayed sentences on counts II-V pursuant to section 654. Defendant filed a timely notice of appeal.

FACTS

On the evening of January 28, 1985, Mario Gomez left a high school soccer game at Oakhurst and drove south on Highway 41 to his Coarsegold home. As Gomez approached the intersection of Highway 41 and Route 425 near Coarsegold, a blue four-door automobile passed him at approximately 80 miles per hour. Gomez was traveling at approximately 55 miles per hour. He saw the tail lights of the speeding automobile for a time and then noticed a flash. Gomez next saw debris and gravel strewn about the highway and Coarsegold Creek Bridge. He heard someone moaning, went back to his car, got some flares, and lit the area. Gomez saw a vehicle in Coarsegold Creek and bodies near the vehicle. He found substantial damage to the guard rail of the bridge and observed a car door wrapped about it. He climbed down to the creek bed and saw the defendant in pain. Gomez lifted defendant's head out of the stream to keep defendant from drowning.

California Highway Patrol Officer Forest Busby responded to the accident scene at 8:05 p.m. Officer Busby observed a car had gone through the Coarsegold Creek guard rail and landed nearly upside down in the creek bed. He found skid marks consistent with the car speeding around the curve at approximately 60 miles per hour, and then striking the guard rail without any application of the brakes. The rear passenger door was detached from the car and wrapped around the guard rail. The windshield was half way down between the road and the creek bed. The passenger side of the vehicle sustained the greatest damage and the driver's compartment sustained the least damage. Officer Busby found defendant pinned in the vehicle, with his head, shoulders, and upper torso outside the car body. A man was holding defendant's head up to keep it out of the creek. Officer Busby saw two people behind defendant and a third person on the creek bank approximately 25 feet north of the car. All three persons appeared to be dead.

The car, an Oldsmobile Omega, was registered to defendant and two other people, neither of whom was involved in the accident. Defendant was the only one of the four people in the car who had a driver's license on his person. Two of the victims, Wayne Peter Montgomery and Eli Smith, were found to the rear of the vehicle, in a position indicating they had been in the back seat. The body of Lloyd Montgomery was located approximately 25 feet from the car.

Defendant was transported by ambulance from the scene. Officer Busby requested the California Highway Patrol office in Fresno obtain a blood sample from the defendant. State traffic officer Robert Herndon was present at Valley Medical Center in Fresno when medical personnel obtained a blood sample from defendant. Herndon testified defendant had a very strong odor of alcohol on his breath. Herndon completed documentation to establish a chain of evidence and arrested defendant for felony drunk driving at 9:35 p.m. On January 30, 1985, Gary Cortner, a criminalist with the California Department of Justice Crime Laboratory in Fresno, analyzed defendant's blood sample and found it contained a blood alcohol level between .186 and .187. He testified defendant's blood alcohol level was probably .02 percent higher one hour before the sample was obtained. Cortner further testified anyone driving at .10 or over is an unsafe driver.

On March 25, 1985, Officer Busby contacted defendant at his mother's home in Coarsegold and advised defendant of his *Miranda* rights.[3] Defendant waived his right to remain silent and told Officer Busby he had been drinking and working on his mother's car at her home on the date of the accident. Defendant said he was with Peter and Lloyd Montgomery and Eli Smith. He drove the trio to Oakhurst, approximately 10 miles from his mother's house, to visit his sister. Defendant did not recall who drove back from Oakhurst when the accident had occurred. Defendant told Officer Busby he did not let other people drive his car "most of the time." However, he did allow other people to drive sometimes after he had been drinking. Defendant told the officer Cathy Davis and Pearl Montgomery had driven his car and Pearl Montgomery was the only one who had driven it while defendant was a passenger in the vehicle. Defendant's cousin, Cathleen Davis, testified she never saw defendant allow anyone else to drive his car and he had told her sister he would not let anyone drive his vehicle. Ms. Davis said she drove defendant's car on one occasion but not while he was in the vehicle. Ms. Davis added defendant would not allow anyone else to drive for him when he was drinking.

After investigating the accident scene, Officer Busby concluded the evidence pointed to defendant as the driver. The officer based this conclusion on the position of the victims after the accident, the fact only defendant had a driver's license in his possession, and the fact defendant was a registered owner of the vehicle.

*Defense*

Defendant did not testify on his own behalf. His mother, Lavina Bishop,

---

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

testified defendant's car could be started with a screwdriver. Mrs. Bishop said both Lloyd and Peter Montgomery were allowed to drive defendant's car. She testified she saw Peter Montgomery driving defendant's car in Oakhurst on the night of the accident. Peter Montgomery was driving defendant's car near the intersection of Highway 41 and Road 426. Mrs. Bishop believed Montgomery was coming from her daughter's nearby residence.

### *Rebuttal*

Pearl Montgomery, the aunt of victim Peter Montgomery and the daughter of victim Lloyd Montgomery, said defendant's mother attended the victims' joint funeral. Mrs. Bishop told Ms. Montgomery she was sorry for what happened and said, "Well, thank God Timmy was driving or that would have been him."

### Discussion

#### I. Was the Judgment of Conviction Supported by Substantial Evidence?*

. . . . . . . . . . . . . . . . . . . . . .

#### II. Did the Trial Court Erroneously Instruct the Jury on CALJIC No. 8.90.1?

 Defendant next contends the trial court erroneously instructed the jury in the language of CALJIC No. 8.90.1 (vehicular manslaughter involving drugs or alcohol—defined). Defendant contends the instruction was deficient as given because it did not properly define the elements necessary to prove the commission of the crime.

At the time of the accident and trial, section 192 stated in relevant part: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:

". . . . . . . . . . . . . . . . . . . .

"(c) Vehicular —

"(1) Except as provided in paragraph (3), driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence;

---

*See footnote on page 74, *ante.*

or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

". · · · · · · · · · · · · · · · · ·

"(3) Driving a vehicle in violation of section 23152 [influence of alcohol or drugs] or 23153 [influence of alcohol and drugs causing bodily injury to person other than driver] of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in violation of section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

■ The actus reus of vehicular manslaughter is homicide—the unlawful killing of a human being. (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 349 [211 Cal.Rptr. 742, 696 P.2d 134].) The requisite culpability for the vehicular manslaughter charged here is gross negligence. (§ 192, subd. (c)(3).) ■ "Gross negligence" has been defined as the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. A finding of gross negligence is made by applying an objective test: If a reasonable person in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. (*People* v. *Watson* (1981) 30 Cal.3d 290 at pp. 296-297 [179 Cal.Rptr. 43, 637 P.2d 279].) ■ The statute contemplates a higher degree of culpability than that involved in ordinary negligence. (See *People* v. *Young* (1942) 20 Cal.2d 832, 835-837 [129 P.2d 353].)

CALJIC No. 8.90.1 states in relevant part: "[Defendant is charged in [Count __ of] the information with the commission of the crime of vehicular manslaughter involving [drugs,] [or] [alcohol,] a violation of Penal Code Section 192 [paragraph c] [(3)] [(4)].]

"The crime of vehicular manslaughter involving [drugs] [or] [alcohol] is the unintentional but unlawful killing of a human being in the driving of a vehicle in violation of Vehicle Code Section 23152 or Vehicle Code Section 23153.

"A killing is unlawful when a person commits an act inherently dangerous to human life or safety, amounting to a misdemeanor or an infraction, as will be later defined, or negligently commits an act ordinarily lawful which might produce death.

"In order to prove the commission of the crime of such vehicular manslaughter, each of the following elements must be proved:

"1. That a human being was killed,

"2. That the driver of the vehicle committed an unlawful act, to wit, a violation of __, or negligently committed an act ordinarily lawful which might cause death,

"3. That such unlawful act or negligent conduct was a proximate cause of the death of the person killed, and

"4. That the driver of the vehicle also violated [Vehicle Code Section 23152] [or] [Vehicle Code Section 23153].

"· . . . . . . . . . . . . . . "· . . . .

"[If you find that the defendant is guilty of manslaughter, you must also find whether the act causing the death was done with or without gross negligence, and you must declare your finding in that respect in your verdict.]

"[If you find that the defendant was guilty of manslaughter in the driving of a vehicle, but entertain a reasonable doubt as to whether the act causing death was committed with gross negligence, it would then be your duty to find that it was committed without gross negligence.]"

The Use Note to CALJIC No. 8.90.1 states in relevant part: "The Committee is of the opinion that the unlawful act referred to in Penal Code, § 192, must be an unlawful act other than a violation of Vehicle Code, § 23152, or Vehicle Code, § 23153. Consequently, the court will have to fill in the additional code section which is violated in the blank space provided in paragraph 2."

 The trial court inserted "VC 23153" in element No. 2 of the instruction and, as to that part of the instruction, read to the jury as follows: "two, that the driver of the vehicle committed an unlawful act, to wit, a violation of Section 23153 . . . ." Thus, the trial court overlooked or ignored the Use Note and duplicated the unlawful act set forth in element No. 4, read to the jury as follows: "and four, that the driver of the vehicle *also* violated Vehicle Code Section 23153." (Italics added.) This was error and, unfortunately, such error requires reversal of counts I, II and III.

The People concede the court violated the admonition of the Use Note in giving CALJIC No. 8.90.1. However, they maintain: "There is no question that the jury found that appellant was speeding, in violation of Vehicle Code section 22350, because they found him guilty on Count IV, which alleged that appellant was speeding while under the influence of alcohol . . . . Thus,

although CALJIC No. 8.90.1 did not properly specify that the unlawful act involved was that of speeding, the instructions read as a whole did convey to the jury that the unlawful act inherently dangerous to human life and safety required for vehicular manslaughter, was the act of speeding. The evidence was undisputed that appellant was speeding as he entered the curve and drove off through the guardrail. The jury in fact found that appellant was speeding while driving under the influence. Thus, any instructional error was harmless beyond a reasonable doubt."

To begin, the People's argument fails upon a mere reading of the record before us. While count IV of the information did allege that defendant violated section 23153, subdivision (a), of the Vehicle Code by driving a vehicle under the influence of an alcoholic beverage *and speeding,* the information was not reread to the jury at the time of instruction and argument. The instruction read to the jury as to count IV (and V), CALJIC No. 12.60, "Felony Driving Under the Influence," did not refer to speeding as the necessary additional "act forbidden by law," and the verdict form signed by the jury foreman as to count IV read as follows: "We, the jury in the above entitled matter, find the defendant, TIMOTHY RAY SOLEDAD, guilty of driving under the influence and causing death, a violation of Section 23153(a) of the Vehicle Code as charged in Count Four of the Information on file herein."

Thus, contrary to the People's argument, it cannot be said "The jury in fact found that appellant was speeding while driving under the influence." We must further reject the People's contention the instructional error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

Section 192, subdivision (c)(3) requires the driving of a vehicle in violation of Vehicle Code section 23152 or 23153 *and* the commission of an "unlawful act" not amounting to a felony.

In the instant case, the trial court erroneously omitted the "unlawful act" element of vehicular manslaughter when instructing in CALJIC No. 8.90.1 by referring to Vehicle Code section 23153 rather than another "unlawful act" as required by the statute. ■ A trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence. The court also has a correlative duty to refrain from instructing on principles which have the effect of confusing the jury or relieving it from making findings on relevant issues. (*People* v. *Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130].) ■ Here, the trial court neglected to properly instruct the jury as to the necessary elements of section 192, subdivision (c)(3) and failed to require the jury to find the defendant committed an "unlawful act, not amounting to a felony" while driving a vehicle in violation

of Vehicle Code section 23152 or 23153 (counts I, II and III). In addition, the trial court failed to include in its verdict forms as to counts I through V any reference to or requirement of the commission of an "unlawful act" or "any act forbidden by law" as required by the relevant Vehicle Code sections before a finding of "guilty" could be returned. Thus, the jury was neither instructed nor advised at anytime that it must make a finding on the unlawful act element of vehicular manslaughter. Upon these facts, we cannot find the instructional error was harmless beyond a reasonable doubt and the convictions as to counts I, II and III must be reversed. As the People have previously conceded counts IV and V must also fall (see *ante*), the entire judgment must be reversed and remanded for new trial.[4]

### III. SHOULD THE CASE BE REMANDED FOR RESENTENCING?*

. . . . . . . . . . . . . . . . . . . . .

The judgment is reversed as to all counts and remanded for new trial, at the election of the district attorney, as to counts I, II and III only.

Franson, Acting P. J., and Woolpert, J., concurred.

---

[4]Upon retrial, we recommend the trial court and counsel review our recent decision in *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733] for additional guidance in framing jury instructions on "gross negligence" and in argument.

*See footnote on page 74, *ante*.