Filed 7/8/14  P. v. Heinzel CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063503 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN299323) |
| KATHERINE HEINZEL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Reversed and remanded for further proceedings.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found Katherine Heinzel guilty of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a))[1] (count 1); driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) (count 2); and driving while having an elevated blood alcohol level causing injury (Veh. Code, § 23153, subd. (b)) (count 3). With respect to all three counts, the jury found that Heinzel inflicted great bodily injury within the meaning of section 12022.7, subdivision (a) against two different victims, and that she caused bodily injury to more than one victim within the meaning of Vehicle Code section 23558.

The trial court sentenced Heinzel to an aggregate term of nine years in prison. As to count 1, the trial court imposed the middle term of six years on the substantive offense, and a consecutive term of three years for one of the two great bodily injury (§ 12022.7, subd. (a)) enhancements. The court stayed imposition of sentence on the other great bodily injury enhancement and the multiple victim enhancement. As to counts 2 and 3, the trial imposed several additional terms of imprisonment to run concurrently with the sentence imposed on count 1.

In order to find Heinzel guilty of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) (count 1), the jury was required to find that Heinzel drove under the

---

[1] All subsequent statutory references are to the Penal Code, unless otherwise specified.

influence (or drove with an elevated blood alcohol level) *and* that she *committed a separate unlawful act*, among other elements. Similarly, in order to find Heinzel guilty of driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) (count 2), the jury was required to find that Heinzel drove under the influence *and* that she either *committed a separate illegal act or neglected to perform any duty imposed by law*. Likewise, in order to find Heinzel guilty of driving while having an elevated blood alcohol level causing injury (Veh. Code, § 23153, subd. (b)) (count 3), the jury was required to find that Heinzel drove with an elevated blood alcohol level *and* that she *committed a separate illegal act or neglected to perform any duty imposed by law*.

Despite the statutory requirement that the jury find that Heinzel committed a separate unlawful act,[2] other than driving under the influence or driving with an elevated blood alcohol level, in order to find her guilty on counts 1, 2 and 3, the trial court instructed the jury in a manner that permitted the jury to find that Heinzel's driving under the influence and/or driving with an elevated blood alcohol level satisfied the unlawful act element of the offenses charged in those counts.[3] Heinzel claims that the trial court committed reversible error in so instructing. We agree and reverse the judgment.[4]

---

[2] For ease of reference, we refer to the requirement in counts 2 and 3 that Heinzel have committed a separate *illegal act or neglected to perform any duty imposed by law* as a requirement that Heinzel have committed a separate *unlawful act*.

[3] In her opening brief, Heinzel raised a claim of instructional error only as to count 1. We determined that Heinzel's instructional argument appeared to be equally applicable to her convictions on counts 2 and 3, and requested supplemental briefing from the

3

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.   *The People's evidence*

1.   *The collision*

On November 19, 2011, at approximately 1:50 a.m., Davionne Kelly was driving a Toyota sedan northbound on Interstate 15 (I-15) in northern San Diego County. Brian Morast and Kris Walker were passengers in Kelly's car. Heinzel was driving a Nissan sedan in the same direction. As the vehicles approached a curve, Heinzel's car struck Kelly's car from behind.

The impact caused both vehicles to careen into a guardrail, which gave way, sending them over a cliff. Heinzel's car rolled a few times as it went down the embankment, and came to rest about 75 feet from the top. Kelly's car also rolled several times and came to rest approximately 294 feet down the cliff.

Kelly died at the scene from blunt force injuries that he sustained as a result of the collision. Morast suffered serious, life threatening injuries, including bleeding in his

---

parties. In her supplemental letter brief, Heinzel argued that the court committed reversible instructional error with respect to counts 2 and 3. The People contended in their supplemental letter brief that the trial court did not err in instructing the jury on counts 2 and 3, and in the alternative, that any instructional error was harmless.

4    Heinzel also contends that her convictions on counts 2 and 3 must be reversed because they are lesser included offenses of the offense charged in count 1, and that the trial court was required to strike the great bodily injury enhancements (§ 12022.7, subd. (a)) on count 1. In light of our reversal of the judgment, we need not consider these additional contentions.

brain, multiple fractures, and punctured lungs. Walker also suffered injuries, including a cut to his head that required 17 stitches.

2. *Accident reconstruction testimony*

Scott Parent, a California Highway Patrol officer and an investigator for the Multidisciplinary Accident Investigation Team (MAIT), performed an accident reconstruction analysis as part of his investigation. Parent's investigation included taking measurements at the crash site and analyzing damage to the vehicles. Parent also attempted to estimate the likely speeds of the vehicles just prior to the crash by performing an analysis of the impact of the vehicles to the guardrail, as well as by conducting skid testing.

In Parent's opinion, just prior to the crash, Kelly was traveling at between 58 and 68 miles per hour, and Heinzel was traveling between 91 and 101 miles per hour. Parent concluded that Heinzel's car was straddling two lanes when it struck Kelly's car from behind, causing both vehicles to rotate in a clockwise manner, hit the guardrail, and then roll down the embankment. According to Parent, Heinzel violated at least three traffic infractions: straddling lanes (Veh. Code, § 21658, subd. (a)); driving on a freeway in excess of 70 miles per hour (Veh. Code, § 22356, subd. (b)); and driving faster than the posted speed limit (Veh. Code, § 22348, subd. (a)).

Ernest Phillips, an accident reconstruction specialist employed by the County of San Diego, also performed an accident reconstruction analysis of the collision. Phillips reviewed various reports, including the MAIT report, as part of his investigation. In

5

addition, Phillips conducted a form of computer analysis called "simulation modeling" that relies on "physical evidence from the ground" including information about the vehicles involved in the collision and tire markings, to generate a model of the locations and speeds of the vehicles just prior to the crash. Phillips estimated that Heinzel's Nissan was traveling at a rate of 90 miles per hour just prior to the crash, and that Kelly's car was going 70 miles per hour. Phillips further concluded that tire marking evidence demonstrated that Heinzel's car was straddling two lanes just before it struck the left rear side of Kelly's car.

3.     *Heinzel's intoxication*

Several individuals who encountered Heinzel just after the accident, including a responding police officer and a paramedic, stated that Heinzel smelled of alcohol. A sample of Heinzel's blood taken nearly two hours after the collision revealed a blood alcohol level of between 0.10 and 0.11 percent. Another sample, taken nearly an hour later, showed a blood alcohol content of .09 percent. Raegan Carter, a criminalist with the San Diego County Sheriff's Department, testified that at the time of the collision, Heinzel's blood alcohol level could have been as high as 0.14 percent.

4.      *Heinzel's awareness of the risks of driving under the influence*

Heinzel was a Newport Beach police officer from 1986 until 1994.  During that time, she received training on Vehicle Code violations, alcohol violations, traffic accident investigations, driving under the influence of alcohol, and vehicle operation generally.

B.      *The defense*

California Highway Patrol Officer Mark Latulippe was responsible for preparing a diagram of the accident scene.  Latulippe's diagram depicted tire markings on the roadway made by the vehicles involved in the collision.  Officer Latulippe acknowledged that he transposed the labeling of the vehicles on the diagram's legend, such that tire markings on the diagram that he attributed to Heinzel's car were in fact made by the victims' car, and vice versa.

Stephen Plourd, a defense investigator, took a radar speed survey between 1:18 a.m. and 2:19 a.m. on September 15, 2012, at a location on I-15 near the site of the collision.  Plourd testified that the average speed of the vehicles in his survey was 79.61 miles per hour, that 23 percent of the vehicles in his survey were traveling at speeds in excess of 80 miles per hour, and that 15 percent of those vehicles were traveling at speeds in excess of 85 miles per hour.

# III.

## DISCUSSION

*The trial court committed reversible error in instructing the jury in a manner that permitted the jury to find that Heinzel's conduct in driving under the influence (and/or driving with an elevated blood alcohol level) satisfied the "unlawful act" element of the offenses charged in counts 1, 2 and 3*

Heinzel claims that the trial court committed reversible error in instructing the jury with respect to counts 1, 2 and 3, in a manner that permitted the jury to find that her driving under the influence or driving with an elevated blood alcohol level satisfied the unlawful act element of each of the charged offenses.

A.  *Standard of review and general principles of law governing jury instruction claims*

We review de novo a defendant's claim that the trial court's jury instructions did not correctly state the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'  [Citation.]"  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)  In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume that jurors are intelligent persons, capable of understanding and correlating all jury instructions that are given.  (*Ibid.*)

8

B.      *The charged offenses*

      1.      *Gross vehicular manslaughter while intoxicated (§ 191. 5, subd. (a))*
           *(count 1)*

Section 191.5, subdivision (a) provides:

> "Gross vehicular manslaughter while intoxicated is the unlawful
> killing of a human being without malice aforethought, in the driving
> of a vehicle, where the driving was in violation of Section 23140
> [driving with an elevated blood alcohol level as a minor], 23152
> [driving under the influence or driving with an elevated blood
> alcohol level], or 23153 [driving under the influence or driving with
> an elevated blood alcohol level and causing injury] of the Vehicle
> Code, *and the killing was either the proximate result of the
> commission of an unlawful act*, not amounting to a felony, and with
> gross negligence, or the proximate result of the commission of a
> lawful act that might produce death, in an unlawful manner, and with
> gross negligence."  (Italics added.)

In *People v. Soledad* (1987) 190 Cal.App.3d 74, 81 (*Soledad*), the defendant was

convicted of three counts of vehicular manslaughter with gross negligence involving

alcohol (counts I, II and III) pursuant to former section 192, subdivision (c)(3),[5] as well

as driving while under the combined influence of alcohol and a drug causing injury (Veh.

Code, § 23153, subd. (a)) (count IV) and driving with a blood alcohol level of 0.10

percent causing death and bodily injury (Veh. Code, § 23153, subd. (b)).  With respect to

the counts charging gross vehicular manslaughter while intoxicated, the *Soledad* court

noted that "[former] Section 192, subdivision (c)(3) requires the driving of a vehicle in

---

[5]      The statute at issue in *Soledad* (former § 192, subd. (c)(3)) did not differ in any
material respect from section 191.5, subdivision (a).  (See *Soledad, supra*, 190
Cal.App.3d at pp. 79-80, quoting former § 192, subd. (c)(3).)

violation of Vehicle Code section 23152 or 23153 *and* the commission of an 'unlawful act' not amounting to a felony."  (*Soledad, supra*, 190 Cal.App.3d at p. 82.)

The trial court in *Soledad* instructed the jury that in order to find the defendant guilty of vehicular manslaughter with gross negligence involving alcohol, it had to find, among other elements, that the defendant " 'committed an unlawful act, to wit, a violation of Section 23153. . . .' "  (*Soledad, supra*, 190 Cal.App.3d at p. 81.)  In describing another element of the crime, the trial court "duplicated the unlawful act" set forth above and instructed the jury as follows:  " '[A]nd four, that the driver of the vehicle *also* violated Vehicle Code Section 23153.' "  (*Soledad, supra,* at p. 81.)  The *Soledad* court concluded that by referring to Vehicle Code section 23153 rather than another "unlawful act" as required by the statute, "the trial court erroneously omitted the 'unlawful act' element of vehicular manslaughter."  (*Ibid*; see *People v. Thompson* (2000) 79 Cal.App.4th 40, 64 ["the [*Soledad*] court concluded that such dual use was error because, in effect, it eliminates the 'unlawful act' element of gross vehicular manslaughter"].)

The *Soledad* court "reject[ed] the People's contention the instructional error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [(*Chapman*)])."  (*Soledad, supra*, 190 Cal.App.3d at p. 82.)  Specifically, the court rejected the People's contention that the jury's guilty verdict on count IV demonstrated

10

that the jury had found that the defendant had committed the unlawful act of speeding.[6]

The *Soledad* court reasoned:

> "To begin, the People's argument fails upon a mere reading of the record before us.  While count IV of the information did allege that defendant violated section 23153, subdivision (a), of the Vehicle Code by driving a vehicle under the influence of an alcoholic beverage *and speeding*, the information was not reread to the jury at the time of instruction and argument. The instruction read to the jury as to count IV (and V), CALJIC No. 12.60, 'Felony Driving Under the Influence,' did not refer to speeding as the necessary additional 'act forbidden by law,' and the verdict form signed by the jury foreman as to count IV read as follows: 'We, the jury in the above entitled matter, find the defendant, Timothy Ray Soledad, guilty of driving under the influence and causing death, a violation of Section 23153(a) of the Vehicle Code as charged in Count Four of the Information on file herein.' " (*Soledad, supra,* 190 Cal.App.3d at p. 82.)

After rejecting the People's harmless error argument, the *Soledad* court concluded

that the trial court's instructional error required reversal of the vehicular manslaughter

---

[6] Specifically, the People argued:

> " 'There is no question that the jury found that appellant was speeding, in violation of Vehicle Code section 22350, because they found him guilty on Count IV, which alleged that appellant was speeding while under the influence of alcohol . . . .  Thus, although CALJIC No. 8.90.1 did not properly specify that the unlawful act involved was that of speeding, the instructions read as a whole did convey to the jury that the unlawful act inherently dangerous to human life and safety required for vehicular manslaughter, was the act of speeding.  The evidence was undisputed that appellant was speeding as he entered the curve and drove off through the guardrail. The jury in fact found that appellant was speeding while driving while under the influence.  Thus, any instructional error was harmless beyond a reasonable doubt.' " (*Soledad, supra*, 190 Cal.App.3d at pp. 81-82.)

with gross negligence involving alcohol counts (counts I, II, and III).  In reaching this

conclusion, the court reasoned:

> "Here, the trial court neglected to properly instruct the jury as to the
> necessary elements of [former] section 192, subdivision (c)(3) and
> failed to require the jury to find the defendant committed an
> 'unlawful act, not amounting to a felony' while driving a vehicle in
> violation of Vehicle Code section 23152 or 23153 (counts I, II and
> III).  In addition, the trial court failed to include in its verdict forms
> as to counts I through V any reference to or requirement of the
> commission of an 'unlawful act' or 'any act forbidden by law' as
> required by the relevant Vehicle Code sections before a finding of
> 'guilty' could be returned.  Thus, the jury was neither instructed nor
> advised at anytime that it must make a finding on the unlawful act
> element of vehicular manslaughter.  Upon these facts, we cannot
> find the instructional error was harmless beyond a reasonable doubt
> and the convictions as to counts I, II and III must be reversed."
> (*Soledad, supra*, 190 Cal.App.3d at pp. 82-83.)

2. *Driving a vehicle under the influence and causing injury (Veh. Code,
§ 23153, subd (a))(count 2) and driving a vehicle with an elevated blood
alcohol level causing injury (Veh. Code, § 23153, subd. (b))(count 3)*

Vehicle Code section 23153 provides in relevant part:

> "(a) It is unlawful for a person, while under the influence of any
> alcoholic beverage to drive a vehicle *and concurrently do any act
> forbidden by law*, *or neglect any duty imposed by law in driving the
> vehicle*, which act or neglect proximately causes bodily injury to any
> person other than the driver.

> "(b) It is unlawful for a person, while having 0.08 percent or more,
> by weight, of alcohol in his or her blood to drive a vehicle *and
> concurrently do any act forbidden by law*, *or neglect any duty
> imposed by law in driving the vehicle*, which act or neglect
> proximately causes bodily injury to any person other than the
> driver."  (Italics added.)

12

In *People v. Minor* (1994) 28 Cal.App.4th 431, 436 (*Minor*), this court held that "the trial court committed reversible error by failing to explicitly instruct the jury that it had to find [the defendant] committed a legal infraction *other than* driving under the influence to convict him of violating [Vehicle Code] sections 23153, subdivision (a), and 23153, subdivision (b)." (Italics added.) The *Minor* court noted that the law was clear that in order to establish a violation of either Vehicle Code section 23153, subdivision (a) (driving under the influence causing injury) or Vehicle Code section 23153, subdivision (b) (driving with an elevated blood alcohol level and causing injury), "the evidence must show an unlawful act or neglect of duty *in addition* to driving under the influence." (*Minor, supra*, at p. 438.)

The *Minor* court explained the trial court's instructional error as follows:

> "[W]ith respect to the felony drunk driving charges, the trial court read CALJIC No. 12.60, which includes only the phrase 'did some act which violated the law or failed to perform some duty required by law . . . .' Because the trial court did not reference the applicable Vehicle Code violations with respect to Minor's felony drunk driving counts, the jury very well may have concluded it did not have to find any Vehicle Code violation to convict him on these counts. Inasmuch as the jury could have convicted Minor without finding all of the requisite elements under this instructional charge, we are compelled to find error in this case." (*Minor, supra*, 28 Cal.App.4th at p. 438, fn. omitted.)

In considering whether the error required reversal, the *Minor* court applied *Chapman* and concluded that the jury could have had a reasonable doubt as to whether the defendant committed a Vehicle Code violation *other than* driving under the influence "based upon problems with the credibility of the prosecution's eyewitness." (*Minor,*

*supra*, 28 Cal.App.4th at p. 438, fn. 3.)  The *Minor* court also concluded that a suggestion made by the prosecutor in closing argument, "that felony drunk driving requires Vehicle Code violations" (*id*. at p. 439), did not "render the instructional error harmless in the face of the lengthy instructions by the trial court."  (*Ibid*.)  Accordingly, the *Minor* court concluded, "we cannot say the error was harmless beyond a reasonable doubt. (*Chapman*[, *supra*,] 386 U.S. [at p. 24].)"  (*Ibid*.)

C.      *The challenged jury instructions*

        1.      *Gross vehicular manslaughter while intoxicated (count 1)*

The trial court instructed the jury with respect to the charged offense of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) (count 1) pursuant to a modified version of CALCRIM No. 590, in relevant part as follows:

> "[T]he defendant is charged in count 1 with gross vehicular manslaughter while intoxicated, in violation of Penal Code section 191.5[, subdivision] (a).
>
> "To prove the defendant is guilty of the crime, the People must prove that:  One, the defendant drove under the influence of an alcoholic beverage or drove while having a blood alcohol level of .08 or higher; two, while driving a vehicle under the influence of an alcoholic beverage, the defendant also committed a misdemeanor or infraction, or otherwise lawful act that might cause death; three, the defendant committed the misdemeanor or infraction, or otherwise lawful act that might cause death with gross negligence; and four, the defendant's gross[ly] negligen[t] conduct caused the death of another person.
>
> "The People allege that the defendant committed the following misdemeanors or infractions:  *Vehicle Code section 23152[, subdivision] (a), driving under the influence of alcohol; Vehicle code section 23152[, subdivision] (b), driving while having a blood*

14

*alcohol level of 0.08 or higher*; Vehicle Code section 22348[, subdivision] (a), driving faster than the posted speed limit; Vehicle Code section 22356[, subdivision] (b), driving over 70 miles an hour; Vehicle Code section 21658, driving not entirely within a single lane and moving from the lane without reasonable safety.

"Instruction 2110 tells you what the People must prove in order to prove that the defendant committed [a violation of] Vehicle Code section 23152[, subdivision] (a), driving under the influence of alcohol.

"Instruction 2111 tells you what the People must prove in order to prove that the defendant committed [a violation of] Vehicle Code section 23152[, subdivision] (b), driving while having a blood alcohol [level] of 0.08 or [higher].

"Instruction 595 tells you what the People must prove in order to prove that the defendant committed [a violation of] Vehicle Code section 22348[, subdivision (a)], driving faster than the posted speed limit; [Vehicle Code section] 22356[, subdivision] (b), driving over 70 miles an hour; Vehicle Code section 21658, driving not entirely within a single lane and moving from the lane without reasonable safety.

"[¶] . . . . [¶]

"The combination of driving a vehicle while under the influence of [an] alcoholic beverage and violating a traffic law is not enough, by itself, to establish gross negligence.  In evaluating whether the defendant was acting with gross negligence, consider the level of the defendant's intoxication, if any; the way the defendant drove, and any other relevant aspects of the defendant's conduct.

"[¶] . . . . [¶]

"The People allege that the defendant committed the following misdemeanors or infractions: *driving under the influence of alcohol; driving with a measurable blood alcohol level;* driving faster than the posted speed limit; driving over 70 miles an hour; driving not entirely within the lane and moving when not safe to do so.  *You may not find the defendant guilty unless all of you agree that the People*

15

*have proved that the defendant committed at least one of those alleged misdemeanors or infractions and you all agree on which misdemeanor or infraction.*"  (Italics added.)

> 2.    *Driving a vehicle under the influence and causing injury (count 2) and driving a vehicle with an elevated blood alcohol level (count 3)*

The trial court instructed the jury with respect to the charged offense of driving a vehicle under the influence and causing injury (Veh. Code, § 23153, subd. (a)) (count 2) pursuant to a modified version of CALCRIM No. 2100 in relevant part as follows:

> "To prove that the defendant is guilty of this crime, the People must prove that:  One, the defendant drove a vehicle; two, when she drove a vehicle, the defendant was under the influence of an alcoholic beverage; three, while driving a vehicle under influence, the defendant also committed an illegal act or neglected to perform a legal duty; and four, the defendant's illegal act or failure to perform a legal duty caused bodily injury to another person.
>
> "[¶] . . . .[¶]
>
> "The People . . . allege that the defendant failed to perform the following legal duty while driving the vehicle: the duty to exercise ordinary care at all times and to maintain proper control of the vehicle.
>
> "The People . . . allege that the defendant committed the following misdemeanors or infractions: *Vehicle code section 23152[ subdivision] (a), driving under the influence of alcohol; Vehicle code section 23152[, subdivision] (b), driving under the influence of alcohol, .08 or higher*; Vehicle Code section 22348[, subdivision] (a), driving faster than the posted speed limit; Vehicle Code section 22356[, subdivision] (b), driving over 70 miles an hour; Vehicle Code section 21658, driving not entirely within a single lane and moving from the lane without reasonable safety.
>
> "*You may not find the defendant guilty unless all of you agree that the People have proved the defendant committed at least one illegal*

16

*act or failed to perform at least one duty. You must all agree on which act the defendant failed to perform*." (Italics added.)

The trial court provided a nearly identical instruction with respect to the charged offense of driving a vehicle with an elevated blood alcohol level and causing injury (Veh. Code, § 23153, subd. (b)) (count 3), with the exception that the court referred to driving with a "blood alcohol level [of] 0.08 percent or more by weight" rather than driving "under the influence" in describing the elements of count 3.

D.      *The trial court committed reversible error in instructing the jury with respect to the charged offense of gross vehicular manslaughter while intoxicated (count 1)*

In order to find Heinzel guilty of the offense of gross vehicular manslaughter while intoxicated, the jury was required to find that she committed both: (1) a violation of Vehicle Code section 23152 (driving under the influence); *and a separate* (2) "unlawful act, not amounting to a felony, and with gross negligence."  (§ 191.5, subd. (a); see *People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159 (*Verlinde*) ["The elements of Penal Code section 191.5 are: (1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed"].)

Despite the existence of these separate elements, the portion of the trial court's instruction on gross vehicular manslaughter while intoxicated italicized above (see pt. III.C.1., *ante*) permitted the jury to find that Heinzel's alleged violations of Vehicle Code

17

section 23152 satisfied the unlawful act element of section 191.5, subdivision (a). Thus, "the trial court neglected to properly instruct the jury as to the necessary elements of [gross vehicular manslaughter while intoxicated]." (*Soledad, supra*, 190 Cal.App.3d at p. 82; see also 1 CALCRIM (2014) Related Issues to CALCRIM No. 590, p. 343 ["The Vehicle Code driving-under-the-influence offense of the first element cannot do double duty as the predicate unlawful act for the second element," citing *Soledad, supra*, at p. 81].) Accordingly, we conclude that the trial court committed clear instructional error.

The People do not contend otherwise. Instead, the People argue that the error was harmless beyond a reasonable doubt.[7] (See *Soledad, supra*, 190 Cal.App.3d at p. 82 [applying *Chapman* standard of prejudice].) We reject each argument that the People offer in support of this contention. First, the People note that the trial court *did* mention several *proper* predicate offenses within the challenged instruction (e.g. driving faster than the posted speed limit, driving over 70 miles an hour, driving not entirely within a

---

[7] The People did not dispute in their briefing on appeal that the *Chapman* standard of prejudice applies in reviewing the asserted instructional error with respect to count 1. Instead, the People argue, "Even assuming it was error for the trial court to instruct the jury that a violation of Vehicle Code section 23152, subdivision (a) or (b) could serve as one of appellant's unlawful predicate acts, under the circumstances presented by this case the error was harmless under any standard."

However, in their supplemental letter brief, the People contend that the standard of prejudice in *People v. Watson* (1956) 46 Cal.2d. 818 (*Watson*) applies to the court's instructional error as to counts 2 and 3. We reject the People's argument that *Watson* applies with respect to the instructional error as to counts 2 and 3. (See pt. III.E.2.a., *post*.) To the extent that the People contend that the *Watson* standard of prejudice applies to the instructional error as to count 1, we reject the People's argument for the same reasons that we provide for rejecting this argument in connection with the instructional error as to counts 2 and 3.

18

single lane and moving when not safe to do so). The fact remains that the instruction permitted the jury to find the second element of the offense—committing an unlawful act while driving under the influence—based on either of two *improper* predicate offenses (e.g. driving under the influence of alcohol, driving with a measurable blood alcohol level). Further, the jury may very well have improperly relied on one of the alcohol-related predicate offenses to satisfy the *second* element of gross vehicular manslaughter while intoxicated, given that the jury was required to unanimously agree that Heinzel had committed an alcohol-related offense to satisfy the *first* element of the offense. As Heinzel argues in her brief:

> "It is reasonable to conclude that the jury approached the elements in order. Once they found a violation of Vehicle Code [section] 23152, subdivision (a) or (b) for purposes of the 'drunk driving' element, they simply could have used that same finding as the basis for the unlawful act element. There would have been no reason to make any findings with respect to the three proper unlawful acts since the instruction told them that a finding with respect to any one of the five unlawful acts was all that was required."

This likelihood was increased by the fact that the improper alcohol-related predicate offenses were listed first in the list of predicate offenses in the instruction.

The People contend that the instructional error was harmless because the evidence "was *undisputed* that [Heinzel] also committed all three of [the] traffic infractions" on which the jury could have properly based a finding that Heinzel committed an unlawful act in addition to driving under the influence. To begin with, we reject the People's argument that the evidence that Heinzel committed the predicate traffic offenses was

19

*undisputed*. There was no eyewitness testimony that Heinzel had been speeding or that she had made an improper lane change, and the defense challenged the People's accident reconstruction experts' conclusions that Heinzel committed such violations, both through cross-examination and in closing argument.

With respect to cross-examination, defense counsel subjected both of the People's accident reconstruction experts to vigorous cross-examination in an attempt to raise a reasonable doubt as to the experts' conclusions that Heinzel had been speeding and had made an unsafe lane change. For example, with respect to Heinzel's speed, defense counsel questioned Phillips about a report that suggested that the roadway was wet at the time of the accident, a factor that Phillips acknowledged could have affected his calculation of the speed at which the vehicles were travelling before the accident.[8]

---

[8] California Highway Patrol Officer Michael Zappia, Jr., responded to the scene of the collision. Officer Zappia testified that he prepared a January 2012 report that described the highway at the time of accident as " 'wet from a previous rain.' " At trial, Zappia testified that he recalled there being "moisture in the center of each lane and then not moisture toward the outer portion of each lane."

Phillips testified that Zappia had been incorrect in stating that the highway was wet at the time of the accident.

Parent also acknowledged the significance of wetness of the highway for purposes of calculating the vehicles' speeds prior to impact:

> "The initial report that we received had the roadway marked as being dry. So my entire analysis was based upon a dry roadway.
>
> "After the investigating officer completed his report, he had mentioned in his report that the roadway was wet from a previous rain. So that's very concerning because my entire analysis was based upon a dry roadway. Obviously, if you have a wet roadway, some of those speeds I calculated are not going to be correct."

20

Defense counsel questioned Officer Parent with respect to factors that may have affected the guardrail impact analysis that he conducted to estimate the vehicles' speeds before impact.[9] Parent acknowledged that this case was the first case in which he had performed a guardrail analysis. As to the unsafe lane change, defense counsel engaged in a line of questioning that prompted Phillips to acknowledge, "We don't have physical evidence on the ground to tell us where these vehicles are prior to impact."[10] Phillips also acknowledged during cross-examination that he had "switched the lanes" in his report in describing the location of Heinzel's car just before the crash.

During closing argument, after noting the absence of any direct evidence as to how the crash had occurred, defense counsel argued, "How is that we have two experts . . .

---

[9] The People's other accident reconstruction expert, Phillips, stated that guardrail impact analysis is "not a common form of analysis in our field," and that he "wasn't comfortable using that specifically as a separate form of analysis."

[10] In describing the basis for his conclusion that Heinzel had been straddling two lanes just prior to impact, Phillips stated:

> "The tire mark evidence plotted on the ground shows us where [Kelly's car] was . . . during the time it was struck. The same is true for [Heinzel's car]. So at impact, we know that [Kelly's car] is in the number 2 lane and [Heinzel's car] is straddling between the 2 and the 1. Mostly in the 2. [¶] However, the question is: Where is [Heinzel's car] before that? Is it in the 2 going to the 1 or is it in the 1 going into the 2 or driving down the two lanes? [¶] The most logical seems to be . . . [Heinzel's car is] in the number 1 and then drifts . . . over into the 2. That would be—the most expected from a curve to the left when you [are] traveling in a curve to the left. But we can't be completely dogmatic about that because we don't have physical evidence."

who came to substantially the same conclusion about how the accident occurred, but they contradicted each other drastically in their analysis of how they got there?" Defense counsel also argued, "How are we supposed to accept that these experts got it right on the speeds of these cars that are traveling on this road, where all they have left really to reconstruct it, [are] these skid marks? How can we accept that their speeds . . . pre-impact are correct when they're basing them, in part, on flawed and contradictory arguments?" In light of defense counsel's cross-examination of the People's expert witnesses and closing argument, we reject the People's contention that it was *undisputed* that Heinzel committed an unlawful act in addition to driving under the influence.

More importantly, even assuming that the jury found that Heinzel committed an unlawful act in addition to driving under the influence, the jury was required to find that she committed that unlawful act *with gross negligence*. (See *Verlinde, supra*, 100 Cal.App.4th at p. 1159 ["when so driving, committing some unlawful act, such as a Vehicle Code offense *with gross negligence*" (italics added)].) Whether Heinzel committed an unlawful act with gross negligence was the central issue in the case. Defense counsel made this clear when she began her closing argument as follows:

> "Good afternoon, ladies and gentlemen.
>
> "This is not a gross negligence case. . . . [¶] . . . You'll recall that [the prosecutor] indicated, in her remarks to you, that if you are impaired by alcohol [and commit a traffic infraction] . . . it is not enough to establish gross negligence . . . .[11]

---

11      Defense counsel was referring to the portion of the trial court's jury instruction in which the court stated:

"Gross negligence takes more than that. And I'm going to submit to you, ladies and gentlemen, that even on the People's theory of how this accident occurred, between a .09 and .14 blood alcohol level, on that particular stretch of freeway, in the middle of the night, on a downward turn, that the People's theory is that is how the accident happened, it does not rise to the level of gross negligence.

"What types of things would it take to turn this case into a gross negligence case? It would take the things that you've probably seen and experienced in your life; weaving in and out of lanes, passing cars on the freeway. In a non-freeway case, running a red light, prior D.U.I., prior moving violations. These are not things that we have in this case. So on the question of what is the other relevant conduct that would rise to the level of gross negligence, we have nothing, other than under the People's theory, speed and intoxication."

---

"The combination of driving a vehicle while under the influence of [an] alcoholic beverage and violating a traffic law is not enough, by itself, to establish gross negligence. In evaluating whether the defendant was acting with gross negligence, consider the level of the defendant's intoxication, if any; the way the defendant drove, and any other relevant aspects of the defendant's conduct."

In their supplemental letter brief, the People contend that this portion of the trial court's jury instruction rendered the trial court's instructional error harmless because it directed the jury to consider the manner by which Heinzel *drove* in determining whether she acted with gross negligence. We are not persuaded. Instructing the jury to consider "the way the defendant drove" did not inform the jury that it had to find that Heinzel committed a *separate unlawful act* in order to find her guilty of gross vehicular manslaughter while intoxicated, as was required. At best, this portion of the instruction rendered the entire instruction confusing and contradictory, since the portion of the instruction that outlined the gross negligence element of the offense stated that the People were required to prove that Heinzel "committed the misdemeanor or infraction . . . with gross negligence," and listed driving while under the influence of alcohol and driving with an elevated blood alcohol level as among the predicate offenses.

23

By instructing the jury in a manner that permitted the jury to find that Heinzel's alleged act in driving under the influence satisfied the unlawful act element of section 191.5, subdivision (a), the court's instruction improperly permitted the jury to find that Heinzel's act in *driving under the influence* was grossly negligent. This was potentially prejudicial because, as noted, in order to find Heinzel guilty of gross vehicular manslaughter while intoxicated, the jury was required to find that, while driving under the influence, Heinzel committed a separate *unlawful act* with gross negligence. (See *Verlinde*, *supra*, 100 Cal.App.4th at p. 1159.) Yet the jury was never instructed to this effect.

The People also note that the prosecutor stated during closing argument, "[Heinzel] committed an infraction; same one, either failing to drive within the two lane [lines], in this particular case, or driving over the posted speed limit of 70 miles an hour." The prosecutor's reference to these *proper* predicate offenses in her argument did not render harmless the trial court's inclusion of *improper* predicate offenses in its instruction on the elements of the charged offense. (See *Minor, supra*, 28 Cal.App.4th at p. 439 [prosecutor's suggestion that charged offense required finding of separate Vehicle Code violation did not render trial court's listing of improper predicate offenses harmless].)

Finally, the People note that in addition to finding Heinzel guilty of gross vehicular manslaughter while intoxicated (count 1), the jury also found her guilty of driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) (count 2) and driving while having an elevated blood alcohol level causing injury (Veh. Code, § 23153,

24

subd. (b)) (count 3). The People further observe that the jury was required to find that Heinzel committed a separate unlawful act while driving under the influence in order to find her guilty of counts 2 and 3, and that the jury instructions for counts 2 and 3 referred to the same three proper predicate offenses referred to in the court's gross vehicular manslaughter while intoxicated instruction.

This argument is unpersuasive because the trial court's instructions on counts 2 and 3 suffered from the same defect as contained in its instruction on gross vehicular manslaughter while intoxicated. (See pt. III.E., *post*.) As with its gross vehicular manslaughter while intoxicated instruction, the trial court's instructions on both driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) (count 2) and driving while having an elevated blood alcohol level causing injury (Veh. Code, § 23153, subd. (b)) (count 3) permitted the jury to find the separate unlawful act element of each offense based on Heinzel's alleged alcohol-related Vehicle Code violations. Thus, the instructions and the jury verdicts on counts 2 and 3 do not demonstrate that the trial court's error on count 1 was harmless.

Accordingly, we conclude that the trial court committed reversible error in instructing the jury in a manner that permitted the jury to find that Heinzel's alleged violation of Vehicle Code section 23152, subdivision (a) and/or Vehicle Code section 23152, subdivision (b) satisfied the unlawful act element of gross vehicular manslaughter while intoxicated (count 1).

E.     *The trial court committed reversible error in instructing the jury with respect to the charged offenses of driving a vehicle under the influence and causing injury (count 2) and driving a vehicle with an elevated blood alcohol level and causing injury (count 3)*

1.     *The trial court committed clear instructional error in instructing the jury on counts 2 and 3*

In order to find Heinzel guilty of either driving a vehicle under the influence and causing injury (count 2) or driving a vehicle with an elevated blood alcohol level and causing injury (count 3), the jury was required to find that Heinzel drove under the influence (or drove with an elevated blood alcohol level) *and* that she committed a separate unlawful act. (*Minor, supra*, 28 Cal.App.4th 431.)

Despite the existence of these separate statutory elements, by listing Heinzel's violation of Vehicle Code section 23152 (drinking and driving) as among the illegal acts that the People contended Heinzel had committed, the trial court's instructions on both driving a vehicle under the influence and causing injury (count 2) and driving a vehicle with an elevated blood alcohol level and causing injury (count 3), improperly permitted the jury to find that Heinzel's alleged violations of section 23152 (drinking and driving), alone, satisfied the separate unlawful act element of each offense. (See pt. III.C.2., *ante.*) As in *Minor*, the "the jury could have convicted [appellant] without finding all of the requisite elements under this instructional charge." (*Minor, supra*, 28 Cal.App.4th at p. 438.)

We are not persuaded by the People's suggestion in their supplemental letter brief that the trial court did not "run afoul of *Minor*'s holding," because the trial court's

26

instructions did refer to Vehicle Code violations that the jury *might* have properly found

satisfied the unlawful act element. *Minor* makes clear that in order to find a defendant

guilty of either driving a vehicle under the influence and causing injury (Veh. Code,

§ 23153, subd. (a)) or driving a vehicle with an elevated blood alcohol level and causing

injury (Veh. Code, § 23153, subd. (b)), the People must present evidence that the

defendant committed "an unlawful act or neglect of duty *in addition* to driving under the

influence." (*Minor, supra*, 28 Cal.App.4th at p. 438.) By instructing the jury in this case

in a manner that permitted the jury to find that Heinzel's driving under the influence (or

driving with an elevated blood alcohol level) *itself* satisfied the unlawful act element, the

trial court violated *Minor* by failing to properly describe the elements of the charged

offenses.

Accordingly, we conclude that the trial court committed clear instructional error

with respect to counts 2 and 3.

2.    *The error requires reversal*

a.    *The proper standard of prejudice*

"Instructions . . . misdescribing an element of an offense are subject to harmless

error analysis under the test of *Chapman v. California, supra*, 386 U.S.18." (*People v.*

*Breverman* (1998) 19 Cal.4th 142, 194; see *People v. Larsen* (2012) 205 Cal.App.4th

810, 829 (*Larsen*) ["An instructional error that . . . improperly describes . . . an element of

an offense, violates the defendant's rights under both the United States and California

27

Constitutions, and is subject to *Chapman* review"]; *Minor*, *supra*, 28 Cal.App.4th at p. 439 [applying *Chapman* standard of prejudice].)

"The beyond-a-reasonable-doubt standard of *Chapman* 'requir[es] the beneficiary of a [federal] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citation.] 'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation] Thus, the focus is on what the jury actually decided and whether the error might have tainted its decision. That is to say, the issue is 'whether the . . . verdict actually rendered in this trial was surely unattributable to the error.' [Citation.]" (*People v. Neal* (2003) 31 Cal.4th 63, 86; see *People v. Wilkins* (2013) 56 Cal.4th 333, 350, quoting *People v. Hudson* (2006) 38 Cal.4th 1002, 1013 ["In deciding whether a trial court's misinstruction on an element of an offense is prejudicial to the defendant, we ask whether it appears ' " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained' " ' "].)

We are unpersuaded by the People's suggestion that the *Watson* standard of prejudice applies because the trial court's instructional error affected only an "aspect of an element" of an offense. (Citing *Larsen*, *supra*, 205 Cal.App.4th at p. 829 ["A distinction is drawn 'between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element.' (*People v. Cummings* (1993) 4 Cal.4th 1233, 1315 [(*Cummings*)]"].) In *Cummings*, the Supreme

28

Court was drawing a distinction between a type of instructional error that is reversible *per se* (i.e. instructional error that entirely precludes jury consideration of an element of an offense) and instructional error that is subject to the *Chapman* standard of prejudice (error affects only an aspect of an element). (*Cummings, supra*, at pp. 1311-1315.)[12]

In short, *Cummings*, and therefore *Larsen*,[13] do not support the proposition that a trial court's misinstruction on an aspect of the element of an offense is subject to the *Watson* standard of prejudice. Further, other California Supreme Court case law makes clear that instructional error that affects an "aspect of an element" of an offense is subject to the *Chapman* standard of prejudice. (See, e.g., *People v. Avila* (1995) 35 Cal.App.4th 642, 651 ["the *Chapman* standard applies to the failure to instruct on a single aspect of a multi-element offense in this case"]; *People v. Harris* (1994) 9 Cal.4th 407, 425 [stating that the *Chapman* standard applies "where the jury has been misinstructed on some aspect of an element of the charged offense"].)

      b.    *The error cannot be deemed harmless beyond a reasonable doubt*

As with the trial court's instruction on count 1, the instructions on counts 2 and 3 permitted the jury to find an element of the offenses—committing an unlawful act while

---

12    In *Cummings*, the People argued that the *Chapman* standard applied to review of the trial court's failure to instruct on four of the five elements of robbery, but the *Cummings* court concluded that the error was reversible *per se*. (*Cummings*, *supra*, 4 Cal.4th at p. 1315.)

13    While we do not read *Larsen* as suggesting that the *Watson* standard of prejudice applies to instructional error that affects only an aspect of an element of an offense, to the extent that *Larsen* may be read to so hold, we decline to follow it.

driving under the influence—based on two improper predicate offenses (e.g. driving under the influence of alcohol, driving with a measurable blood alcohol level).  Further, the error may well have contributed to the jury's verdicts given that the jury was required to find that Heinzel had committed the improper alcohol-related predicate offenses in order to find that the People had proven the drunk driving elements of counts 2 and 3, and the improper alcohol-related predicate offenses were first in the instruction's list of predicate offenses.

We reject the two arguments that the People offer in support of their contention that any error committed by the trial court was harmless beyond a reasonable doubt.  First, while the People note that the jury also found Heinzel guilty of gross vehicular manslaughter while intoxicated (count 1), we have concluded that the trial court committed reversible error in instructing the jury on count 1.  (See pt. III.D., *ante*.)  Thus, the jury's verdict on count 1, does not demonstrate that the trial court's error on counts 2 and 3 was harmless.  Second, for the reasons stated in part III.D., *ante*, we reject the People's contention that the instructional error was harmless because it was undisputed that Heinzel committed all three of the traffic infractions upon which the jury could have properly based a finding that she committed an unlawful act in addition to drinking and driving.

Accordingly, we conclude that the People have not demonstrated beyond a reasonable doubt that the trial court's instructional errors pertaining to the offenses of driving a vehicle under the influence and causing injury (count 2) and driving a vehicle

30

with an elevated blood alcohol level and causing injury (count 3) did not contribute to the jury's verdicts on these counts. We therefore conclude that the trial court committed reversible error in instructing the jury on both counts.

## IV.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings.

 

                                         AARON, J.

WE CONCUR:

NARES, Acting P. J.


IRION, J.